KNOLL, Judge.
The issue presented on this appeal is whether worker’s compensation death benefits are due for a heart attack sustained on the job. E. Jean Carruthers appeals the dismissal of her claim against PPG Industries, Inc. (hereafter PPG) for worker’s compensation, penalties and attorney’s fees as a result of the death of her husband, Stephen A. Carruthers. The trial court concluded that Mrs. Carruthers was not entitled to death benefits because Mr. Car-ruthers’ heart attack was not causally related to his employment. We affirm..
FACTS
Long before his death, Mr. Carruthers suffered from multiple and serious illnesses, including: emphysema; hypertension; diabetes; a defective right valve in the heart; and, residual wasting of his chest muscles as the result of polio myelitis, which he contracted as a youth. He had to use oxygen from the time he arrived home from work until he left for work the next morning. He was unable to perform any physical exertion and when he was at home, he read or watched television.
Mr. Carruthers was a chemical engineer and a lifelong employee of PPG. He was 54 years of age at the time of his death. In 1980, he was transferred from PPG’s Beaumont plant to its Lake Charles plant. Before he started working at the Lake Charles plant, Dr. Harold Lovejoy, the plant physician, examined him and recommended to management that he perform only sedentary work and that Mr. Carruth-ers avoid plant operation areas which would expose him to chemical vapors. Pursuant to Dr. Lovejoy’s recommendations, management located Mr. Carruthers away from chemical vapors and assigned him to analyzing data and preparing reports.
On February 1, 1983, within minutes after arriving at work, Mr. Carruthers died from an acute myocardial infarction while seated at his desk.
CAUSATION
Mrs. Carruthers contends the trial court erred in its determination that she failed to prove by a preponderance of the evidence that Mr. Carruthers’ heart attack was causally related to his employment. She testified that her husband purposefully avoided climbing stairs in everyday life because of his health problems. She argues that two months prior to death, his office was moved to the second floor and because there was no elevator, he was required to ascend a flight of stairs 5 steps in length, and then ascend a second flight of stairs of no less than 8 steps. She urges that the stairs caused too great an exertion for Mr. Carruthers and this caused his heart attack.
In Reid v. Gamb, Inc., 509 So.2d 995, at pages 996-997 (La.1987), the Supreme Court succinctly recapped the proof required in heart attack cases:
“The function of the ‘arising out of’ requirement of La.R.S. 23:1031 is to assure that compensation will be awarded only for personal injury causally related to the employment and fairly part of the employer’s cost of business. In heart disease and related cases many courts have established special rules for proof of causation because death or injury from heart disease may ordinarily be the result of natural physiological causes rather than trauma or particular effort and because of the fear that heart cases and related types of injury and death will get out of control unless some kind of arbitrary boundaries are set up.
This court in Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626, 633 (La. *44 1982) drew upon the rules suggested by Professor Larson, see IB A. Larson, Workmen’s Compensation Law Subsection 38.83 (1980), to formulate precepts to govern proof that a worker’s heart accident arises out of the employment: (1) If the employee has a previously weakened or diseased heart the employment exertion, stress or strain, acting on the preexisting condition, must be a degree greater than that generated in everyday non-employment life and must be a cause in fact of the employee’s personal injury or death; (2) if there is no prior weakness or disease, the employment exertion, stress or strain must be simply a cause in fact of the worker’s personal injury or death; (3) to be a cause in fact in either situation the employment exertion, stress or strain must precipitate, accelerate, aggravate, or otherwise cause or contribute to the worker’s personal injury or death.
In Guidry this court made clear that there is no presumption that a vascular accident occurring on the job is caused by the employment. The plaintiff must prove the causal link between the employment and the accident by a preponderance of the evidence.
These precepts are compatible with many preexisting jurisprudential rules. Accordingly, it is not necessary for the claimant to prove that the work was the sole cause of the heart injury, so long as it is shown to be a contributing, accelerating or aggravating factor. The presence of a history of arteriosclerosis or even the fact a heart attack was ‘inevitable’, does not necessarily rule out an award. Lay testimony may be relied on to support a causal connection, even when there is positive medical testimony to the contrary. In view of medical experts’ understandable tendency to assess causation of disease in the context of the patient’s whole history, rather than as it relates specifically to employment, their testimony as to job-injury relationships should be evaluated carefully: for example, cautious medical testimony couched in terms of ‘might have’ and ‘possibly’ may be used in conjunction with lay testimony to find a probability, and positive conclusory statements about causation by doctors should not be uncritically adopted.” (Citations omitted.)
An appellate court will not overturn a trial court’s resolution of the question of causation unless it is manifestly erroneous or clearly wrong. Id., at page 1002. Turning to the case at hand, we first review the medical evidence presented.
Dr. Alfred Brady, a cardiologist, treated Mr. Carruthers from 1973-1980 in Beaumont, Texas. In his deposition, he candidly summarized Mr. Carruthers’ condition, stating:
“... Again, he happens to have an unusual combination of events of both car-dial artery disease and pulmonary hypertension and severe lung disease. Which I say unusual, it’s — but he happened to also be a diabetic which would certainly increase his chances of developing cardial artery disease and the hypertension as well. So, I certainly see how he would have a progressive downhill course. You know, if he had just pulmonary hypertension along with the pressures he had and the right heart failure, well, he’d have a progressive downhill course from that alone, much less other disease processes going on.”
He opined that although climbing stairs could possibly have caused Mr. Carruthers’ heart attack, any number of his physical problems could have caused it. He further stated that Mr. Carruthers’ heart attack could have begun hours before he arrived at work, and characterized Mr. Carruthers as a walking time bomb.
Dr. Paul Shaw, a pulmonary specialist who saw Mr. Carruthers from 1976-1980 in Beaumont, Texas, testified that he treated Mr. Carruthers for chronic obstructive pulmonary disease and emphysema, and described his heart/lung problems as progressive. He initiated a walking program for Mr. Carruthers, and though Mr. Car-ruthers first increased his walking tolerance up to one-half mile by April 1976, his tolerance for walking decreased through the years.
*45 Dr. David Dobbins, a family practitioner, treated Mr. Carruthers from 1980 to the time of his death in 1983. He corroborated the earlier medical evidence, and since he was Mr. Carruthers’ neighbor, he offered his personal observations that Mr. Carruth-ers neither did anything recreational nor worked around the house because of his extreme breathing difficulties. Dr. Dobbins noted that any activity was stressful to Mr. Carruthers. He opined that Mr. Carruthers ascending the stairs shortly before his death could have contributed in some degree to his heart attack.
The only other examining physician was Dr. Harold Lovejoy, PPG’s plant physician. He testified that climbing stairs could have caused stress to Mr. Carruthers’ heart, and that if he (Dr. Lovejoy) had been consulted by management, he would have recommended that Mr. Carruthers not climb stairs. He also opined that Mr. Carruth-ers’ physical condition was such that he could have had a heart attack at any time, with or without stairs, and that heart attacks can occur suddenly, over a period of days, or hours. He further testified that Mr. Carruthers never complained about his office being moved to the second floor and that he had to climb stairs.
The only non-treating physician to testify was Dr. Charles Woodward, a cardiologist. He did not see Mr. Carruthers but examined Mr. Carruthers’ medical records. He opined that there was no medical evidence to preponderate that climbing the stairs caused the heart attack. He based his opinion on: (1) Mr. Carruthers’ poor health; (2) general medical knowledge that a heart attack may be precipitated without any exertion and can start hours before; (3) his observation that heart attack patients are permitted to climb stairs within 7-10 days after suffering a heart attack; and, (4) hot or cold showers are equivalent to the exertion of climbing a flight of stairs.
Mr. Carruthers’ family, his co-workers and his supervisor agreed that Mr. Car-ruthers’ job involved no mental stress; the project he had just begun had a deadline of two years, required no physical labor, and that he enjoyed his work.
Mrs. Carruthers testified about the restricted life Mr. Carruthers led, and particularly his avoidance of stairs because of his severely impaired breathing. She stated that her husband was not pleased when his office was moved to the second floor. The last time she remembered him climbing stairs was 1980, when PPG provided him with temporary housing after he was transferred from Beaumont.
After thoroughly reviewing the evidence, we find that the trial court was not manifestly erroneous or clearly wrong in its determination that the evidence does not preponderate that Mr. Carruthers’ heart attack was causally related to his employment.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Mrs. Carruthers.
AFFIRMED.