551 So.2d 1282 (1989)
E. Jean CARRUTHERS
v.
PPG INDUSTRIES, INC.[*]
No. 88-C-2947.
Supreme Court of Louisiana.
May 1, 1989.
Rehearing Granted June 30, 1989.
On Rehearing October 23, 1989.
Rehearing Denied November 22, 1989.
Stephen A. Berniard, Jr., Lee Gallaspy, Raggio, Cappel et al, for plaintiff-applicant.
John S. Bradford, Jeanne M. Sievert, Stockwell, Sievert et al, for defendant-respondent.
COLE, Justice.
A few minutes after he arrived at work, plaintiff's husband died of a heart attack. Since the death occurred at the place of employment, plaintiff sought workers' compensation benefits for her husband's death. The decedent, Stephen Carruthers, suffered from emphysema, hypertension and diabetes, had residual damage from childhood poliomyelitis, and took medication to control the hypertension and to prevent a recurrence of congestive heart failure. Defendant PPG Industries, Inc., his employer, refused to pay benefits, believing the death was not work-related. Plaintiff filed suit and the lower courts found plaintiff failed to prove she was entitled to benefits.

ISSUE RESOLUTION
The issue before us is whether plaintiff proved by a preponderance of the evidence that ascending a flight of stairs at his workplace shortly before death had a causal relationship to Carruthers' fatal heart attack. The plaintiff contends the work-related exertion, stress or strain need only be *1283 of a degree greater than that of decedent's everyday non-employment life. In Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982), we determined the correct standard in pre-existing heart disease cases is that the employment-related exertion, stress or strain, acting upon the pre-existing disease, must be greater than that generated in everyday non-employment life. The test is an objective one; the standard reference is the everyday life of the average non-worker.
We conclude the evidence in this case does not meet the applicable standard of proof and we therefore affirm the lower courts.

FACTS
Stephen Carruthers drove to work on the morning of February 2, 1983, parked his car in the plant lot, proceeded to the office building, entered and ascended five steps to a landing on the first floor level. He had climbed these five steps without complaint since the middle of 1980. From the landing he had to ascend approximately eight additional steps in order to reach his office on the second floor. An employee in the office adjacent to Mr. Carruthers saw him pass in the hall. A few minutes later, another employee found him slumped unconscious over his desk. Although medical help was summoned, he could not be revived and the death certificate listed the cause of death as acute myocardial infarction.
Mr. Carruthers worked as a chemical engineer for PPG Industries for 29 years and eight months, from the time of college graduation until his death at age 54. At the time of his death, he had long suffered from a number of ongoing medical problems. He had contracted poliomyelitis at the age of 17, from which he had residual damage to the chest muscles and lungs. He developed high blood pressure and diabetes in the early 1970s, then, some years later, emphysema. The record shows decedent had a history of smoking although it is unclear how much or how long he smoked. At the time of his death, he used an oxygen machine in his off-work hours.
In 1980, Mr. Carruthers had been transferred by PPG from Beaumont to Lake Charles, where he worked as a senior process engineer. In November of 1982, he was assigned to a new project and his office was moved from the first floor to the second floor, near the offices of employees engaged in the same project. He died the following February and his widow, Jean Carruthers, now argues his death was accelerated because he had to climb stairs to the second floor in the course of his employment.
After his sudden death, PPG conducted an investigation. It concluded the death was not a work-related occurrence and plaintiff was not entitled to workers' compensation benefits. The trial court agreed and the court of appeal affirmed, 534 So.2d 42, finding the plaintiff had failed to prove by a preponderance of the evidence that Mr. Carruthers' heart attack was causally related to his employment.

ANALYSIS
This workers' compensation claim is governed by La.R.S. 23:1031, which provides in relevant part:
If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation....
Under our jurisprudence, myocardial infarctions (heart attacks) have been found to satisfy the statutory requirements of personal injury by accident. See, e.g., Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626, 629 (La.1982); Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975); Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625 (1946). It is also well-settled that an accident occurs in the course of employment when it happens during the time of employment and at a place contemplated by the employment. Reid v. Gamb, 509 So.2d 995, 996 (La.1987); Michaleski v. Western Preferred Casualty Co., 472 So.2d 18 (La.1985); Guidry, supra; Lisonbee v. Chicago Mill & Lumber Co., 278 So.2d 5 (La. 1973). This is true even if the *1284 heart attack occurs during an authorized rest period. Guidry, 418 So.2d at 629. Therefore, even though Carruthers had just arrived at work and might not have begun his daily tasks, his heart attack took place during the time of employment and in the usual place of employment. Thus, we find the injury here occurred "in the course of employment."
The more difficult question in this case is whether Carruthers' death arose out of his employment. The function of the "arising out of" requirement of La.R.S. 23:1031 is to assure compensation will be awarded only for personal injury causally related to the employment and fairly part of the employer's cost of doing business. Reid, 509 So.2d 995, 996 (La.1987), citing Nix v. City of Houma, 488 So.2d 184 (La.1986); Guidry, supra; Adams v. New Orleans Public Service, Inc., 418 So.2d 485 (La.1981) (modified on rehearing); Roussel, supra; Leleux v. Lumbermen's Mutual Ins. Co., 318 So.2d 15 (La.1975); Prim v. City of Shreveport, 297 So.2d 421 (La.1974). See also, 1B Larson, Workmen's Compensation Law § 38.81 (1986) (hereinafter Larson) and Malone and Johnson, 13 Louisiana Civil Law TreatiseWorkers' Compensation Law and Practice § 191 (2d ed. 1980) (hereinafter Malone and Johnson).
The determination of what compensation payments are fairly considered a part of the employer's cost of business is best made by looking at the policies underlying workers' compensation:
The purpose of the [workers' compensation] Act is to single out employment risks from the general body of dangers to which all mankind is exposed. The perils of employment have been regarded by our legislature as deserving special treatment because they present special economic and social problems not typical of accidents generally. It has been said that the purpose of compensation is to spread the cost of industrial accidents among the consumers of the industry's product.
Malone and Johnson, supra, § 192 at 387.
In many situations, compensation follows automatically from accidental injury in the workplace. For example, benefits are awarded when the employee does not contribute in any way to the injury which occurs, but is merely in the workplace at the time. In these instances, any employment nexus, even the fact the employer merely put the employee in the place where the injury occurred, suffices for recovery. On the other hand, when the employee contributes some personal element of risk, e.g. heart disease, the employment must increase the risk of injury before the employee can be compensated. Employment factors must offset the causal contribution of the personal element of risk. 1B Larson, supra, § 38.83(b).
Some scholars have argued that every accident occurring in the course of employment should be compensable regardless of the nature of the risk involved, and some jurisdictions have adopted such a view. Most states, however, have insisted the risk that brought about the accident must bear some relationship to the nature of the employment. Malone and Johnson, supra, § 192. Our legislature adopted the latter view by incorporating into La.R.S. 23:1031 the requirement that an accident arise out of the employment to be compensable. Our law insists that the risk which brought about the accident be related in some way to the nature of employment and caused by some unique characteristic associated with the work or the working environment. Malone and Johnson, supra, at § 143.
The legislative choice is appropriate. A rule requiring employers to compensate every injury, regardless of whether the employment in any way caused the injury, would unfairly burden employers and thus threaten the availability of adequate compensation for those employees whose injuries were in fact caused by their employment. Moreover, were the rule otherwise, many employers would be reluctant to hire workers with even slight health problems if the natural progression of employees' illnesses, rather than work-related causes, made employers liable for compensation. As Professor Larson has explained:
If the time has come for the employee to die a natural death, or to expire from the *1285 effects of some disease or internal weakness of which he would as promptly have expired whether he had been working or not, the fact that his demise takes place in an employment setting rather than at home does not, of course, make the death compensable.
1 Larson, supra, at § 7.20. At the same time, employees who deserve compensation should not be denied. Thus the long-standing rule is that an employer must take the worker as he finds him. Behan v. John B. Honor Co., 143 La. 348, 78 So. 589 (1917).
Death from heart disease is ordinarily the result of natural physiological causes rather than trauma or particular effort. Therefore, in order to reconcile the competing policy considerations noted above and protect the interests of both employee and employer, many courts have established special rules for proof of causation in heart disease cases. These rules reflect the belief that compensation should not be awarded for deaths not really caused in any substantial degree by the employment. 1B, Larson, supra, at § 38.81.
Our jurisprudence in this area has been termed "fairly liberal." However, it has also been noted that even though a claimant's burden of proof in heart attack cases has been greatly relaxed, such cases should not be regarded as dispensing with the requirement that the claimant establish some causal link between the employment and the disabling event. See, Reid v. Gamb, Inc., 509 So.2d 995 (La.1987); Guidry, 418 So.2d at 632; see also, Adams v. New Orleans Public Service, Inc., 418 So.2d 485, (La.1981) (modified on rehearing); Malone and Johnson, supra, at § 215. This court has rejected the idea that merely because a heart attack occurs on the job it is compensable. We have never created a presumption that a heart attack sustained at work is caused by the employment. In fact, our cases have always required there be some causal relation between employment and accident. Guidry, 418 So.2d at 632.
In Guidry, we determined the degree of work-related stress or strain necessary to satisfy the legal test of "arising out of" the employment. Causation was examined in the context of pre-existing heart disease. The Guidry standard or formula in cases of this nature is:
For the heart accident to arise out of or be connected with the employment, the exertion, stress or strain, acting upon the pre-existing disease, must be of a degree greater than that generated in every day non-employment life (e.g., as compared to the more or less sedentary life of the average non-worker).
Guidry, 418 So.2d at 633 (emphasis added).
As Guidry makes clear, the standard is an objective one. Thus plaintiff urges us to adopt a new, subjective test by arguing we should compare the employee's work-related stress to the amount of stress in his non-employment life to determine whether the heart attack was job-related. We decline to do so. Such a standard would ignore the considerations of causation and attendant fairness to employers and thus contravene the underlying purposes of the compensation statute.
We are also mindful of the rule in workers' compensation cases that the plaintiff has the burden of proving the causal link between the employment and the accident by a preponderance of the evidence. Reid, 509 So.2d at 997 (La.1987); Guidry, supra; Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Plaintiff must thus show by a preponderance of the evidence that the work effort, stress or strain contributed in some degree to the heart "accident." Unless this burden of proof is met, it can hardly be said that the accident arose out of the employment or that the employment in any measure contributed to the accident. Guidry, 418 So.2d at 633. The rule does not require the claimant to prove the work was the sole cause of the heart injury, so long as it is shown to be a contributing, accelerating or aggravating factor. The presence of a history of arteriosclerosis or even the fact a heart attack was "inevitable," does not necessarily preclude an award. Reid, 509 So.2d at 997 (citations omitted).
In applying these principles, we have not hesitated to award compensation where the *1286 evidence has established a causal link between the employment and the claimant's heart problem. See e.g., Nix v. City of Houma, 488 So.2d 184 (La.1986) (stress of two-day work-related trip away from home, seminar and drive home in traffic and rain combined to contribute to heart attack of 64-year-old diabetic); Adams v. New Orleans Public Service, Inc., 418 So.2d 485 (La.1981) (modified on rehearing) (heat and physical stress of plaintiff's employment clearly brought on angina pectoris); Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975) (decedent died of heart attack after working for three days dismantling a 175-pound pump); Leleux v. Lumbermen's Mutual Insurance Co., 318 So.2d 15 (La. 1975) (decedent suffered stroke after hauling four loads of rice in non-airconditioned truck in extreme heat); Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1968) (plaintiff suffered permanent disability from heart condition caused by mixing, hauling and pouring concrete under hot sun); Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625 (1946) (carpenter died after working all morning on a roofing job requiring him to carry 90-100 pound rolls of roofing paper up a 12-13 foot ladder).
Conversely, where causation was not established under the Guidry test, compensation has been properly denied. Wooley v. State of Louisiana, Through Dept. of Health and Human Resources, 527 So.2d 573 (La.App. 3d Cir.1988) (compensation denied to 263-pound claimant with hypertension, diabetes, and family history of heart disease even though usual duties as "gate guard" were physically and emotionally stressful); Mayeux v. Weiser Security Services, Inc., 508 So.2d 132 (La.App. 4th Cir. 1987), cert. denied, 512 So.2d 454 (La.1987) (compensation denied where security guard died of heart attack which could have been caused by caffeine consumption, smoking, financial stress or arteriosclerosis); Edwards v. Exxon Co., 485 So.2d 228 (La. App. 3d Cir.1986), cert. denied, 489 So.2d 250 (La.1986) (causation not shown where plaintiff's routine work-related tasks on morning of stroke included resolving problem with frozen valve and emptying of five-gallon bucket of condensate); Johnson v. Hendrix Manufacturing Co., Inc., 475 So.2d 103 (La.App. 2d Cir.1985) (foundry worker who performed heavy manual labor, but who also suffered hardening of the arteries, extreme overweight, high level of fat and uric acid in the blood, history of smoking and heavy consumption of caffeine, denied compensation where most significant factor contributing to heart attack was chronic hypertension); Pennington v. Reading and Bates Construction Co., 432 So.2d 1173 (La.App. 3d Cir.1983) (compensation denied to welder's foreman who suffered heart attack a few minutes after riding bus to job site where no evidence was produced of job-related stress or strain).
In short, under our jurisprudence, when the employee suffers from a pre-existing heart illness, compensation is properly denied if it does not appear that some work incident actually triggered the attack with resulting death or disability. See Malone and Johnson, supra, § 232 at 495. Thus, if plaintiff failed to meet the burden of establishing the causal link between employment and the disabling event, her claim will not succeed. Reid v. Gamb, 509 So.2d 995 (La.1987); Prim v. City of Shreveport, 297 So.2d 421 (La.1974).

EVIDENCE
Mrs. Carruthers testified the last time decedent climbed stairs was in 1980 when the Carruthers were transferred from Beaumont to Lake Charles. While looking for a new home, they resided in a second floor apartment and she contends decedent had to stop at the top of the stairs and rest due to his severe emphysema. The record shows, however, that decedent climbed at least five steps to enter the PPG office building between July of 1980 and November of 1982, apparently without complaint.
Because of his severe breathing difficulties, decedent used an oxygen machine when he was at home. He was attached to the machine by a hose, and his activities were restricted to reading and watching television. Apparently decedent so rarely emerged from the house that Dr. David *1287 Dobbins, who was a neighbor and the treating physician at the time of death, said, "If he had not come to my office, I would have thought Mrs. Carruthers was a widow."
Mrs. Carruthers testified when her husband's office was moved from the first to the second floor, he told her he wished he could keep the first floor office. The Carruthers' daughter, an LSU student at the time, said her father told her he had to go down to the first floor to confer with other employees. However, this latter testimony was rebutted by PPG employees who said after decedent got to his second floor office, he conferred only with employees in offices clustered near his own. Nothing else in the record shows decedent complained of or commented to anyone about having to climb stairs at work. Although he saw his treating physician, Dr. David Dobbins, at least every other month, Mr. Carruthers did not mention having to climb stairs at work to the doctor.
The record shows PPG was aware of decedent's physical limitations. When Mr. Carruthers first came to Lake Charles, he was examined by the PPG plant doctor, Dr. Harold Lovejoy. Dr. Lovejoy recommended decedent be given only sedentary work and be kept out of operating areas of the plant where his breathing problems could be aggravated by fumes. In fact, Mr. Carruthers' job was entirely sedentary, since all his duties involved analyzing data at his desk.
The decedent's supervisor testified that, to his knowledge, decedent was not under mental or emotional stress in connection with the project he was working on nor was there an immediate deadline since the project had a two-year time frame. This evidence is supported by Mrs. Carruthers' testimony that the weekend before his death, Mr. Carruthers talked at some length and with enthusiasm about the project he was working on. On Monday, he worked but was disappointed that evening when he was prevented from watching an opera because of cable television difficulties. In a pretrial deposition, Mrs. Carruthers said her husband spent all evening "glaring" at the TV and working on his income tax. His death came on the following workday. There was medical testimony at trial to the effect the ischemic process, whereby blood supply to the heart is decreased, could have begun with these frustrations.
In addition to this testimony, the record contains opinions of five doctors concerning the causal relationship of decedent's work-related stress to his heart attack. Dr. Alfred Brady, Jr., the cardiologist who treated decedent during the years he lived in Beaumont, testified by deposition that Mr. Carruthers developed heart failure as a result of his severe lung disease. Furthermore, he was a high-risk candidate for coronary artery disease and heart attack because of his diabetes and hypertension. While it was theoretically possible that climbing the stairs "could have" had a causal relationship to Mr. Carruthers' death, Dr. Brady said other factors were also important, such as the distance between the parking lot and the building, as well as the temperature outside that day. He further testified, the ischemic process preceding the heart attack could have begun as long as 24 hours before death. Had this been the case, he opined, climbing the stairs could have served as a "finishing off factor" since Mr. Carruthers was "basically speaking ... a time bomb to start with."
Dr. Paul Shaw, a specialist in lung diseases who also treated Carruthers in Beaumont, also testified by deposition. When Dr. Shaw last saw him in 1980, he was in a rehabilitation program which sought to increase the level of his ability by encouraging him to exercise to the limits of his tolerance. At that time, exercising to the point of breathlessness would not have hurt Carruthers. This opinion was apparently based on Dr. Shaw's belief that his heart condition resulted from emphysema and hypertension, not from coronary artery disease. Finally, Dr. Shaw would express no opinion as to whether climbing stairs might have led to Mr. Carruthers' death because he had not seen him during the last three years of his life.
Three other doctors testified as witnesses at trial. The first was Dr. Harold Love-joy, *1288 PPG plant physician in Lake Charles, who had recommended decedent be restricted to sedentary work. Dr. Lovejoy believed decedent was not the type of person who should engage in physical exertion and said he would have recommended Mr. Carruthers not be forced to climb steps had he been asked. While Dr. Lovejoy said it was impossible to ascertain when the ischemic process began, he believed it could have started when decedent became frustrated because he couldn't watch his television program and worked on his taxes instead. Dr. Lovejoy conceded climbing the stairs might have precipitated the fatal heart attack, yet he opined Mr. Carruthers' condition was such that "he could have had a heart attack at any time, steps or no steps, at night or in the morning or any time." Finally, in Dr. Lovejoy's opinion, the duties of Carruthers' job, including walking into the building and up the steps, would not have exerted greater stress on his pre-existing problems than the everyday tasks in the life of the average non-employed person.
Dr. Charles Woodard, a cardiologist who PPG retained to examine decedent's medical records, also testified. Dr. Woodard's opinion was that Mr. Carruthers was at a "higher" risk of heart attack because of four significant pre-existing problems: emphysema, diabetes, hypertension, and a history of smoking. Furthermore, Dr. Woodard could not say more probably than not that walking up the stairs caused Mr. Carruthers' heart attack. He did say decedent's job-related activitieswalking, working at a desk, climbing stairswere equal to the activities of the average person's non-employment life. In particular, Dr. Woodard did not consider climbing stairs significant exertion since heart patients do so seven to 10 days after a heart attack. Dr. Woodard said other ordinary activities, such as taking a very hot or very cold shower, cause an amount of stress equal to that of climbing stairs.
The last doctor to testify at trial was Dr. David Dobbins, a family practitioner and treating physician at the time of Mr. Carruthers' death. He explained two of Carruthers' medications alleviated strain on the heart and improved its ability to pump, while a third controlled his blood pressure. In Dr. Dobbins' opinion, climbing the stairs could have precipitated the heart attack and did in fact contribute in some degree to the heart attack. On the other hand, Dr. Dobbins did concede any physical activity Mr. Carruthers engaged in was stressful to him. Although Dr. Dobbins said Mr. Carruthers always called right away when he had a problem, he never complained to Dr. Dobbins about being stressed from climbing the stairs at work.

CONCLUSION
We find the plaintiff failed to prove by a preponderance of the evidence that Carruthers' heart attack was caused by work-related stress to any degree whatever. The strongest evidence of a causal relationship came from Dr. Dobbins, who said he believed climbing the stairs contributed in some degree to Carruthers' heart attack. Four other physicians were willing only to speculate that climbing the stairs could have caused the heart attack. Plaintiff urges us to apply the rule of Williams v. Liberty Mutual Insurance Co., 327 So.2d 462, 468 (La.App. 3d Cir.1976) where it was held not in error to accord the opinion of the treating physician greater weight where medical testimony was conflicting. Even according greater weight to Dr. Dobbins' testimony, his statement balanced against the overwhelming weight of the other evidence in the case fails to prove more probably than not a causal relation between Carruthers' work and his heart attack.
Lay testimony may be relied on to support a causal connection when there is positive medical testimony to the contrary. Reid, 509 So.2d at 997. In this context, we have considered Mrs. Carruthers' testimony that in the last years of his life her husband avoided climbing stairs because of his severe emphysema. Still, the evidence as a whole does not support a finding that Carruthers' employment stress or strain, acting on his pre-existing condition, was of a degree greater than that generated in the everyday non-employment life of the average *1289 person. Guidry, supra, 418 So.2d at 633. The unrebutted testimony in the record shows the contrary is true. We cannot say the average non-employed person does not climb a flight of stairs or exert himself in some equivalent physical manner.
As we stated in Guidry:

[S]imply being at work on the job is not enough, since at the time of and for an appreciable period before the accident such worker (i.e., with a pre-existing heart disease) may not have been engaged in his usual stressful activities, or his usual work may have been of a sedentary nature, or may have involved no physical stress or exertion beyond that generated in everyday non-employment life. In either of these latter cases, it is difficult to say that the accident arose out of the worker's employment rather than that the accident arose out of or was prompted simply by the pre-existing heart disease.

Guidry, 418 So.2d at 633-34 (emphasis supplied).
We have held a causal relationship may be inferred when there is proof of an accident during the course of employment and an ensuing disability or death with no intervening cause. Leleux v. Lumbermen's Mutual Insurance Co., 318 So.2d 15, 17 (La.1975). Nevertheless, the evidence must show more probably than not the work precipitated the injury. Id. Here, the plaintiff has produced only the unsupported inference that use of the stairs in a state of poor health caused or contributed to decedent's heart attack. Such inference alone is insufficient to meet the burden of proof.
If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry the burden of persuasion. Likewise, the plaintiff's case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture. Prim v. City of Shreveport, 297 So.2d 421, 422 (La.1974). Here, the evidence leads to the conclusion that decedent's heart attack was as likely caused by the natural progression of his disease as by any work-related stress.
For the foregoing reasons, we find plaintiff failed to prove more likely than not Mr. Carruthers' heart attack was caused or contributed to by the stress of his workplace or his employment duties. The lower courts, in finding as a matter of fact that the employment did not contribute to Carruthers' death, were not manifestly in error or clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). In light of this factual finding, their decision to deny recovery was also correct as a matter of law. Accordingly, we affirm the rulings of the lower courts.
AFFIRMED.
DIXON, C.J., and DENNIS, J., dissent with reasons.
WATSON, J., dissents.
DIXON, Chief Justice (dissenting).
I respectfully dissent. This opinion is convincing that there is no medical evidence that climbing the stairs at work was not causally related to the decedent's fatal heart attack.
DENNIS, Justice, dissents.
I respectfully dissent.
Admittedly, our prior cases are ambiguous on the point, but it appears to me that the better rule is that the work related stress or exertion need only be in excess of the non-employment life of the decedent, not that of the average worker or other mythical person. State v. Kemp, 711 P.2d 1142 (Wyo.1986); So. Bell Tel. & Tel. Co. v. McCook, 355 So.2d 1166 (Fla.1977); Meadow Gold Dairies v. Oliver, 535 P.2d 290 (Okla.1975); Baker Mobiles of Florida v. O'Neil, 412 So.2d 34 (Fla.Dist.Ct.App. 1982); Market Food Dist., Inc. v. Levenson, 383 So.2d 726 (Fla.Dist.Ct.App.1980).

On Rehearing
WATSON, Justice.
In this suit for workers' compensation death benefits, plaintiff, E. Jean Carruthers, contends that her husband's heart attack[1] *1290 at work was an accident arising out of his employment with defendant, PPG Industries, Inc.[2]
Decedent, Stephen A. Carruthers, was a chemical engineer who died on his job at the age of 54. Although Carruthers had worked for PPG Industries, Inc. for 29 years and 8 months, his wife received no pension or retirement benefits because he died before the age of 55. Carruthers had been a PPG employee since his graduation from the University of Utah and had worked in Corpus Christi, Texas; Pensacola, Florida; Beaumont, Texas; and, finally, Lake Charles, Louisiana.
Carruthers was transferred from Beaumont to Lake Charles in July of 1980. On August 19, 1980, the PPG plant physician, Dr. Harold B. Lovejoy, recommended that Carruthers be limited to sedentary work because Carruthers had severe chronic obstructive pulmonary disease, hypertension, diabetes and liver enlargement. Dr. Lovejoy told Carruthers he should take a disability retirement, which Carruthers said he would consider.
Carruthers had residual lung disease from poliomyelitis. His lung disease caused pulmonary hypertension, which later developed into right heart failure and edema. The right heart failure or "cor pulmonale"[3] limited Carruthers' activity by making him very short of breath. As early as 1976, when Carruthers was 48 years old, his performance on a treadmill was significantly restricted and he was totally exhausted after 4 minutes and 15 seconds.
For several years prior to his death, Carruthers had done no household chores and spent his entire time at home connected to an oxygen machine. When the family first moved to Lake Charles, they lived in a second-floor PPG apartment. Carruthers did not like going up and down the stairs and always sat down on the top step. Consequently, the family bought a one-story home.
Carruthers was a senior projects engineer and worked under Thomas C. Jeffery, a senior projects manager. Carruthers had been assigned to work with Jeffery and had been transferred from the first floor to a second-floor office a short time before his death. When his office was moved from the first floor to the second floor, Carruthers expressed concern about the stairs to his family.
If he had been consulted, Dr. Lovejoy would have recommended that Carruthers not be moved to the second floor. In Dr. Lovejoy's opinion, Carruthers did not have enough reserve breathing to climb stairs. Dr. Lovejoy thought he should have been contacted when Carruthers was given an assignment that required him to climb stairs.
Decedent's daughter, Lorraine Carruthers Menard, an L.S.U. student, testified that she visited her parents in Lake Charles every other weekend. At home, her father sat down or stayed in bed and always used his oxygen machine. She left for school the Monday morning of her father's death and saw him leave for work.
On that Monday, February 1, 1983, Carruthers left his house around 7:00 a.m. He customarily left early to avoid traffic. A co-worker, Percy Frederick Eloi, Sr., who had an adjacent office, said that Carruthers did not speak to him when he passed his open door. Carruthers had been in his office only a few minutes when another employee noticed him slumped across his desk. At 8:00 a.m., Dr. Lovejoy examined Carruthers and found no pulse or breathing. An autopsy gave the time of death as 8:30 a.m. The cause of death was acute myocardial infarction.
*1291 The medical evidence about causation was not conclusive. According to Dr. Lovejoy, Carruthers could have had a heart attack at any time, but climbing the stairs to his office might have precipitated this attack. Since Carruthers avoided stairs in his nonemployment life, climbing stairs at work would have imposed additional stress.
Dr. Alfred Bernard Brady, Jr., board certified in cardiovascular disease by the American Board of Internal Medicine, treated Carruthers in Beaumont, Texas and last saw the patient on September 9, 1980. At that time, Carruthers had dyspnea, which is difficult or labored breathing, with minimal exertion. In Dr. Brady's opinion, Carruthers would have been unable to climb a flight of stairs without periodic rests, and climbing the stairs to Carruthers' second floor office could have had a causal relationship to his death. For a man in Carruthers' condition, climbing stairs required considerable exertion. According to Dr. Brady, Carruthers was "a time bomb" and almost anything could have precipitated his heart attack.[4]
Dr. Paul Vernon Shaw, a specialist in pulmonary disease, consulted with Dr. Brady on September 17, 1976, and last saw Carruthers in October of 1980. At that time, Carruthers had heart failure, emphysema and restrictive lung disease due to residual paralysis of the thoracic muscle from poliomyelitis. In Dr. Shaw's opinion, Carruthers might have reached the point of being unable to climb a flight of stairs. Because he had not seen Carruthers since 1980, Dr. Shaw would not give an opinion about whether climbing stairs precipitated this fatal heart attack.
Dr. Charles B. Woodard, an expert in cardiology, testified on the basis of Carruthers' medical records that the employee was a "time bomb"[5] and ascending a flight of stairs could have triggered his cardiac infarction. On the other hand, Dr. Woodard explained that heart attacks often occur without any precipitating event. In Dr. Woodard's opinion, climbing stairs is mild exertion and probably did not cause Carruthers' heart attack.
Dr. David L. Dobbins, an expert in family practice, was Carruthers' primary physician. He saw Carruthers every month or every other month. At the time of his death, Carruthers' daily medication included.25 milligrams of Lanoxin, 40 milligrams of Lasix and 10 milligrams of Minipress. Lanoxin strengthens the heart, Lasix is a fluid pill and Minipress is a vasodilator which works with Lasix to lower blood pressure. Although they lived across the street from each other, Dobbins never saw Carruthers at home. If Carruthers had not come to Dobbins' office, Dobbins would have thought Mrs. Carruthers was a widow. According to Dr. Dobbins, Carruthers had a borderline ability to breathe and could not exert himself in any way. Carruthers spent all of his time at home on "nasal prong"[6] oxygen. In Dr. Dobbins' opinion, climbing the stairs probably contributed to Carruthers' heart attack. Although Dr. Woodard is a cardiologist, Dr. Dobbins questioned his opinion because Woodard had never seen or treated Carruthers.
A fatal myocardial infarction or heart attack has been considered an accident within the meaning of the Louisiana Workers' Compensation Statutes.[7]Guidry v. Sline Indus. Painters, Inc., 418 So.2d 626 (La.1982).
The trial court concluded that decedent's heart attack was not causally connected to his employment because Carruthers had not commenced his daily duties at the time of death. That decision is clearly wrong as a matter of law. Carruthers was at his place of employment, seated at his desk in his office during normal working hours. An accident occurring during normal *1292 working hours at the employer's place of work is presumed to be in the course of employment. The "course of employment" requirement generally relates to the time, place and circumstances of an accident. There is no evidence that Carruthers was performing any tasks unconnected with his work.
We have said repeatedly in workmen's compensation cases that it matters not that the accident could have occurred at another place and at another time or even at any time. Bertrand v. Coal Operators Cas. Co., 253 La. 1115, 221 So.2d 816, 828 (1969).
The court of appeal affirmed the trial court opinion.[8] A writ was granted to consider the judgment of the court of appeal.[9]
Carruthers' heart attack was an accident in the course of his employment. As pointed out in the original opinion, the decisive issue is whether the heart attack arose from some job related stress or exertion.
The court of appeal and this court on original hearing[10] relied on language in Guidry, supra, to hold that Carruthers' attack did not arise from his employment. Guidry decided that an industrial painter, who was engaged in manual labor and suffered a myocardial infarction during a short break, died of an employment related injury. However, Guidry indicated that the test of causal relationship is objective: the stress, exertion and strain of the employment must be greater than that encountered by the average non-worker.[11]
While Guidry reached a correct conclusion, the prior test in Louisiana was subjective.[12] Malone and Johnson's Louisiana Civil Law Treatise on Workers' Compensation[13] provides a thorough and instructive analysis of the jurisprudence preceding Guidry:
"§ 232. The Abnormally Susceptible Employee
"The courts have firmly established the principle that the employer must take the worker as he finds him.[a] The worker who *1293 is abnormally susceptible to disability is entitled to the full protection of the compensation statute, even though the same accident would have caused little or no harm to a healthy worker. It is not important that the disease or weakened condition might alone have eventually produced disability or death.[b] To take into consideration the health deficiencies of the employee would destroy at once the beneficial scheme of the Act.[c]
"The employee who is abnormally susceptible to disability may be so for a variety of reasons. A pre-existing disease or condition may help to bring about the actual injury by accident to such a worker, when it would not do so to a worker without such a pre-existing deficiency. The most frequent example of this kind of case is the worker with some form of heart deficiency or other cardiac problem which renders him particularly susceptible to a heart attack.[14]

* * * * * *
"Various types of heart ailments constitute a large class of bodily defects which render a worker unusually likely to sustain a disability on a trivial occasion. A variety of diseases, usually the concomitant of advancing age, may weaken the heart and render it vulnerable to very slight strain or exertion. Under such circumstances, the deficient employee is fully protected. * * *"[15]
Prior to Guidry, cardiovascular catastrophes occurring because of work place exertion were classified as accidents arising out of employment. The test was whether there was a causal relationship between the employee's work-related activities and his heart attack. Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975); Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625 (1946). Although Guidry reached a correct result, its objective test departed from the jurisprudence establishing that a worker abnormally susceptible to disability is entitled to compensation for stress or exertion which would not have harmed a healthy worker.
Carruthers is the prototype of the abnormally susceptible employee, and the exertion he made to climb a few stairs was more than he expended in his nonworking life. Carruthers never climbed stairs at home and he was particularly susceptible to the small stress which the stairs presented.
The medical evidence was that Carruthers' death could have been caused by climbing the stairs to his office. That was the testimony of the PPG physician, Dr. Lovejoy, *1294 and an expert cardiologist, Dr. Brady. Dr. Shaw declined to give an opinion and Dr. Woodard had never treated Carruthers. According to the treating physician, Dr. Dobbins, climbing the stairs probably contributed to Carruthers' heart attack. When considered with the evidence that Carruthers was completely inactive at home, the medical testimony makes it more probable than not that Carruthers' heart attack was precipitated by his climb up the stairs. To Carruthers, with damaged lungs, damaged heart and little breath, climbing the stairs required a major exertion, which exceeded that of his nonemployment life.
Carruthers had been working for PPG almost 30 years and would have been entitled to a disability retirement if he had chosen not to work. Instead, Carruthers remained at his job. On the day of his death, he climbed steps which would not have been an obstacle to an average person, sat at his desk to commence the working day and suffered a fatal heart attack. That heart attack was an accident in the course of his employment and arose from his employment.
The original opinion is recalled and vacated.
For the foregoing reasons, the judgment of the court of appeal is reversed; and the defendant employer, PPG Industries, Inc., is ordered to pay workers' compensation death benefits to the plaintiff, E. Jean Carruthers. All costs are taxed to defendant.
REVERSED AND RENDERED.
LEMMON, J., concurs and assigns reasons.
COLE, J., respectfully dissents and assigns reasons.
MARCUS, J., dissents adhering to the views expressed on original hearing.
LEMMON, Justice, concurring.
The question in this case is whether the exertion necessitated by Carruthers' employment satisfied the "arising out of ... employment" requirement of La.R.S. 23:1031.
Compensation should be awarded for the disability or death of an abnormally susceptible employee when both the personal susceptibility and the employment contributed substantially to causing the disability or death. When the personal causal contribution is a previously weakened or diseased heart, the employment contribution must be stress or exertion greater than that of nonemployment life; otherwise, the employment would not be a causative factor. See Guidry v. Sline Industrial Painters, 418 So.2d 626 (La.1982); 1B A. Larson, Workmen's Compensation § 38.83(b) (1986).
In Guidry this court referred to the test for compensability proposed by Professor Larson that "the exertion ..., acting upon the pre-existing disease, must be of a degree greater than that generated in everyday nonemployment life". Id. at 633. However, Professor Larson's proposed test referred to in Guidry also contained an objective standard, the exertion of nonemployment life of the average person. It was not necessary in Guidry to adopt the objective standard proposed by Professor Larson to replace the prevailing "unusual exertion" test which had been previously applied in heart attack cases. The instant case presents that issue squarely.
I am persuaded to adhere to the test that determines the sufficiency of the employment contribution by comparing the exertion the particular employee undergoes at work with that of his nonemployment life. If the work exertion which causes disability or death is greater than that of the particular employee's nonemployment life, then the employment combines with the personal susceptibility as concurrent substantial causes of the death or disability, and the arising out of employment requirement is fulfilled.
In this case Carruthers' employment activity, which included climbing a flight of stairs, was over and above the usual exertion of his nonemployment life, and the fatal heart attack arose out of his employment.
*1295 COLE, Justice (dissenting).
By applying a subjective test to determine whether a worker is entitled to compensation benefits for a heart attack, the majority on rehearing goes against the clear dictates of our established cases and against the latest expression of the legislative will in La.R.S. 23:1021 (as amended by Act No. 454 of 1989). The majority opinion throws courts into an absurd morass of comparisons. Under the rule handed down this day, a court must now face the impossible task of quantifying and comparing every facet of the employee's non-work life with his work life. Any difference, no matter how slight, will serve as a basis for recovery of benefits.
Such a test has never been part of our law. Rather, we have focused on comparing the stress encountered by the worker with that encountered by the average non-worker. In Guidry v. Sline Indus. Painters, Inc., 418 So.2d 626 (La.1982), we clearly stated this test:
For the heart attack to arise out of or be connected with the employment, the exertion stress or strain, acting upon the pre-existing disease, must be of a degree greater than that generated in everyday non-employment life (e.g., as compared to the more or less sedentary life of the average non-worker).
418 So.2d at 633 (emphasis added).
Guidry therefore sets forth a common sense test in which the employee's work stress can be measured against an objective standard.
Applying the Guidry test to the present case, it is obvious that the small amount of stress encountered by Carruthers at work was no greater than that generated in the course of the more or less sedentary life of the average non-worker. As Dr. Woodard, a cardiologist, testified at trial, the act of climbing stairs produces no more stress than other ordinary activities such as taking a hot or cold shower. Yet by seizing upon a subjective test, the majority is able to conclude that since Carruthers was "completely inactive" at home, the stress of climbing a small set of stairs at work exceeded the stress found in his non-employment life. Extending this reasoning leads to absurd results. If, as the majority states, Carruthers was "completely inactive" at home, then it follows that any activity he performed at work (sitting at his desk, carrying a book, etc.) would exceed the stress found in his non-employment life. This is precisely the problem the Guidry test sought to avoid.
Furthermore, the Legislature has recently amended La.R.S. 23:1021 to embody an objective standard:
(7)(e) Heart related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
(Emphasis added).
While this statute was not in effect at the time of Carruthers' heart attack, it nonetheless is clear evidence of the Legislature's desire to apply an objective standard to these types of cases. It is inexplicable why the majority has chosen to adopt a subjective test in the face of this clear pronouncement of the Legislature.
This case presents a classic application of the maxim, "hard cases make bad law." I am not unmindful of the equities in Carruthers' favor. However, in its zeal to grant relief, the majority destroys the workable objective test developed by this court in Guidry and ignores the clear wishes of the Legislature. Furthermore, the majority opinion is inimical to the interests of the working men and women of Louisiana. Employers must now consider *1296 the termination of those employees who constitute medical "time bombs," knowing full well they bear the cost of compensation benefits should the cardiac explosion occur on the job. For these reasons, and for reasons expressed more fully in the majority opinion on original hearing, I respectfully dissent.
*1302 [EDITOR'S NOTE]
NOTES
[*] Editor's Note: This opinion was originally published at 543 So.2d 472. It is published here as corrected with on rehearing opinion.
[1] The term "heart attack" is used to denote a myocardial infarction.
[2] The first paragraph of LSA-R.S. 23:1031 states:

If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.
[3] Cor pulmonale is hypertrophy or failure of the right ventricle resulting from disease of the lungs, pulmonary vessels or chest wall.
[4] Deposition of Dr. Alfred Bernard Brady, Jr., September 15, 1986, p. 47.
[5] Tr. 194.
[6] Tr. 205.
[7] LSA-R.S. 23:1021(1) provided:

"Accident" means an unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury.
[8] Carruthers v. PPG Industries, Inc., 534 So.2d 42 (La.App. 3d Cir.1988).
[9] 536 So.2d 1246 (La.1989).
[10] 543 So.2d 472 (La.1989).
[11] This test, suggested by Professor Arthur Larson in his Treatise on Workmen's Compensation, represents a minority view. See also A. Larson, Workmen's Compensation (Desk ed.) § 38-83 n. 97.1 (1989).
[12] Act No. 454 of 1989 has amended R.S. 23:1021 to provide that:

(7)(e) ... A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
[13] 13 Louisiana Civil Law Treatise 482-84 (2d ed.1980). Footnotes quoted from the treatise will be indicated with letters to distinguish them from the footnotes of this opinion.
[a] "By now, this principle is so well-established as not to need citation. An early and supposedly the leading case on the point is Behan v. John B. Honor Co., 143 La. 348, 78 So. 589 (1918). More recent acceptances of the principle may be seen in St. Pe v. H.P. Foley Electric Co., 341 So.2d 639 (La.App. 4th Cir.1977), Williams v. Liberty Mutual Ins. Co., 327 So.2d 462 (La.App. 3rd Cir.1976), Price v. Houston Fire & Cas. Ins. Co., 155 So.2d 213 (La.App. 3rd Cir.1963) and numerous other cases. In the early case of Womack v. New Orleans Public Service, Inc., 5 La.App. 71, 72 (Orl.1926), the court commented:

`We are gradually becoming accustomed to the originally startling dogma of our brethren of the pill and scalpel to the effect that there often lurks in the human system, a source of evil, inert, inactive, dormant, and in that quiescent state, like the crouching jaguar, innocuous to our physical welfarebut when aroused to action by a trauma or shock, or other abnormal incident, a veritable juggernaut crushing in its path all the vital forces of the body and causing disease, disaster and death. These evil forces, we are told, usually hide behind our teeth and tonsils where from day to day they "ripe and ripe." We understand this theory is not orthodox, and we humbly make our confession of faith, but we venture the assertion that its progress in medical esteem is strewn with many innocent teeth and tonsils, the erstwhile property of our fellow citizens, as vicarious sacrifices upon the altar of medical science.'"
[b] "`We are not aware of a decision of this court on the subject but it is well settled in the jurisprudence elsewhere that the fact that a person was already afflicted with a dormant disease that might some day produce physical disability is no reason why he should not be allowed damages or compensation for a personal injury that causes the disease to become active or virulent and superinduces physician disability.'

"Behan v. John B. Honor Co., 143 La. 348, 351, 78 So. 589, 590 (1918).
"Accord: Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975) (heart attack; `might have' happened anywhere, but happened during employment); Fields v. Sperry Rand Corp., 343 So.2d 339 (La.App. 2d Cir.1977), certiorari denied 345 So.2d 902 (La.) (heart attack, pre-existing arteriosclerosis); Reed v. Mullin Wood Co., Inc., 274 So.2d 845 (La.App. 2d Cir.1973), certiorari denied 275 So.2d 791 (La.) (minor trauma aggravated pre-existing cancerous condition); Parish v. Fidelity & Cas. Co. of New York, 124 So.2d 234 (La.App. 2d Cir.1960) (citing First Edition); Ray v. International Paper Co., 68 So.2d 803 (La.App. 2d Cir.1953) (gangrenous condition of long standing in left leg, eventual amputation unavoidable; sudden strain during employment made amputation immediately necessary; compensation awarded); Custer v. Higgens Industries, 24 So.2d 511 (La.App.Orl.Cir. 1946) (worker afflicted with malignant abdominal tumor which was ruptured by slight exertion on the job, causing death; compensation allowed without mention of fact that such an affliction would almost certainly have proved eventually to be seriously disabling or fatal in the absence of any work occurrence.) See Bowman v. Twin Falls Constr. Co., Inc., 99 Idaho 312, 581 P.2d 770 (1978)."
[c] "Carter Packet Co. v. Reinhardt, 13 Orl.App. 462 (1916)."
[14] Id. at 482-83.
[15] Id. at 484.