KNOLL, Judge.
Plaintiff, Elva Juneau, appeals the judgment of the Office of Worker’s Compensation, which denied her death benefits after her husband, Floyd Juneau, suffered a fatal heart attack. The hearing officer concluded that Floyd's death did not arise out of his employment with defendant, Tudor Construction Company. Elva urges that the hearing officer committed manifest error in applying the wrong legal standard of proof. She also requests penalties and attorney’s fees for the arbitrary and capricious failure of defendant, Continental Insurance Company, to pay benefits.
For reasons which follow, we reverse the decision of the Office of Worker’s Compensation and find that Elva is entitled to worker’s compensation death benefits. We also find penalties and attorney’s fees should have been granted.
DEATH BENEFITS
The version of LSA-R.S. 23:1031 in effect at the time of Floyd’s heart attack and death requires that his widow prove that he received a personal injury by accident arising out of and in the course of his employment. Louisiana jurisprudence considers a fatal heart attack an accident within the context of worker’s compensation. Carruthers v. PPG Industries, Inc., 551 So.2d 1282 (La.1989). Also, the record establishes that Floyd was within the course and scope of his employment at the time of his heart attack and death. See, Youngblood v. Rotor Aids, Inc., 491 So.2d 132 (La.App. 3rd Cir.1986), writ denied, 494 So.2d 1177 (La.1986). Thus, the only issue on appeal is whether the decedent’s heart attack arose out of his employment.
“Arising out of employment” refers to the result of some risk to which an employee is subjected in the course of his employment and to which he would not have been subjected to had he not been so employed. Guidry v. Sline Indus. Painters, Inc., 418 So.2d 626 (La.1982). The Louisiana Supreme Court in Guidry departed from the prior jurisprudence which had set forth a subjective test of whether a causal relationship between the employee’s work related activities and his heart attack existed. It set forth an objective causal test: the stress, exertion, and strain of employment must be greater than that encountered by the average non-worker. In Carruthers, the Louisiana Supreme Court returned to prior jurisprudence, reinforced the subjective causation test, and found benefits due for a worker’s death caused by stress or strain which he would not have incurred at home or a non-work environment.
As such, a worker who is abnormally susceptible to disability is entitled to compensation for stress or exertion which would not have harmed a healthy worker. Carruthers, supra; Houston v. Kaiser Aluminum and Chemical, 531 So.2d 1129 (La.App. 4th Cir.1988); Savoy v. Cameron Parish School Bd., 524 So.2d 820 (La.App. 3rd Cir.1988). When a claim is advanced that mental and emotional stress precipitated the accident, the claimant must prove by a preponderance of the evidence that the mental or emotional stress, in reasonable probability, caused, precipitated, or contributed in some degree, however slight, to the heart attack. Youngblood, supra. A claimant need not prove that his heart accident is caused solely by his employment if the work is shown to be a contributing, accelerating, or aggravating factor. Tucker v. Pony Exp. Courier Corp., 562 So.2d 897 (La.1990).
In the present case, the hearing officer denied Elva death benefits, reasoning that the alleged job-related stress “was not a terminable factor in his death but rather one of many others much more terminable in nature.” The hearing officer’s findings constitute an abuse of discretion and are clearly erroneous because she applied the wrong test. She focused on Floyd’s poor health and habits and failed to ask whether Elva proved that work related stress caused, at least in part, Floyd's heart attack.
*181 The medical evidence shows that the decedent had a prior history of hypertension, obesity, high cholesterol and high triglycerides. He was under medication to control his hypertension. An electrocardiogram conducted on June 21, 1988, revealed a right bundle branch block with T wave abnormality and considerable lateral ische-mia. Floyd also smoked two packs of cigarettes per day for over 30 years and drank approximately 15 cups of coffee per day, one six pack of beer per week, and/or two highballs daily. His family medical history included heart disease, hypertension, and diabetes, with his father having died from chronic heart disease.
Like Mr. Carruthers, Floyd had a predisposition to suffering a heart attack. However, as previously pointed out, even a worker who is abnormally susceptible to disability is entitled to compensation for harm caused by stress. The evidence in the case sub judice undeniably supports a conclusion that Floyd’s job caused him stress. The record reveals that Floyd worked as a job superintendent for Tudor’s Baton Rouge office, which had taken over the Slidell Wastewater Treatment Facility project in Slidell, after Tudor closed its Hammond office. He and Elva lived in a trailer in Slidell provided by Tudor for the duration of the project. They returned to their Bordelonville home approximately twice per month.
Elva testified that the construction project on which Floyd was working was burdened with financial problems, and problems with subcontractors and project engineers. She testified that Floyd expressed concerns about the job daily. He was unusually stressed, very upset with the job’s progress, and suffered from depression, headaches, and sexual dysfunction. He was particularly upset over a status meeting with engineers held three days prior to his death. Floyd told her that the project engineers gave him “holy hell” at the meeting. Elva further stated that, while living at the trailer, he routinely received calls from co-workers and plant personnel subjecting him to pressure to meet tight deadlines. Notably, the record lacks any evidence of stress in his home life.
Richard Setliff, a former vice president of Tudor and Floyd’s immediate supervisor from 1980 until his death, testified that, when the Baton Rouge office took over the Slidell project, it was in a deplorable condition. Floyd experienced much pressure from the engineers to straighten things out and to complete the job quickly. Setliff stated that Floyd became upset at the Thursday meeting and walked out. According to Setliff, Floyd had never been as upset on any previous job.
Julius Strother, the decedent’s co-superintendent on the Slidell project, testified that the Thursday meeting upset Floyd greatly because he took the engineers’ criticisms personally. He opined that Floyd had seemed much more relaxed and jovial while away from the job. Strother stated that either he or Floyd was required to remain in the Slidell area at all times until the project was completed in case a supervisor was needed.
As in Carruthers, the medical evidence shows that Floyd’s death “could have been caused by” this job related stress. In Car-ruthers, the record contained the opinions of 5 doctors concerning the causal relationship of decedent’s work related stress to his heart attack. Mr. Carruthers, like Floyd, was a high risk candidate for a heart attack. One doctor opined that “climbing the stairs could have served as a ‘finishing off factor’ since Mr. Carruthers was ‘basically speaking ... a time bomb to start with.’ ” Another conceded that “climbing the stairs might have precipitated the fatal heart attack.” A third stated that, the stair climbing did contribute in some degree to the heart attack. The fourth physician could not say more probably than not that walking up stairs caused Mr. Carruthers’ heart attack. The last physician declined to give an opinion because he had never treated Mr. Carruthers. On this medical testimony, our highest court found that the heart attack, more probably than not, arose from his employment.
We find that the evidence of a causal connection between Floyd’s heart attack *182 and job related stress is even stronger in this case. According to Dr. L.J. Mayeaux, the decedent’s family physician, the job stress could possibly have contributed to the heart attack. Dr. John Phillips, an expert in cardiovascular medicine, never treated Floyd. He reluctantly conceded, however, that stress could have contributed at least in some degree to the heart attack. Conversely, Dr. Hubert Waguespack, an expert in internal medicine, who had performed physical examinations upon the decedent on three occasions between 1986 and 1989, concluded that, given Floyd’s pri- or history of heart problems and associated risk factor, “I do not see how anyone can attribute his death to stress.”
In light of the facts of this case and our jurisprudence, particularly Carruthers, we find that although her late husband suffered physical ailments that predisposed him to heart ailments, Elva nevertheless proved by a preponderance of the evidence that this particular job assignment placed an extraordinary degree of stress on Floyd which caused, at least to some degree, his heart attack.
As such, she is entitled to death benefits in accordance with LSA-R.S. 23:1231. The record reveals that Elva and Floyd had been married since November 23, 1957, were living together at the time of his death, and had no minor children at that time. Additionally, although Elva had worked until July of 1989, she was not employed at his death. The record further shows that Floyd earned $21 per hour and worked 40 hours per week, for an average weekly wage of $840. Thus, according to LSA-R.S. 23:1232, she is entitled to weekly compensation of $273.
PENALTIES & ATTORNEY’S FEES
Elva also seeks penalties and attorney’s fees, arguing that the employers/insurers’ action in refusing to pay was arbitrary, capricious, or without probable cause. We find defendant’s action in denying Elva Juneau death benefits after the rendition of Carruthers, Guidry, and Youngblood, supra, upon which we rely, to be arbitrary and capricious. Thus, this court grants Elva’s request for penalties and attorney’s fees, in the amount of $8,000 for counsel’s efforts at the trial level, and $3,000 for counsel’s efforts at the appellate level, which included 2 oral arguments.
For the above and foregoing reasons, we reverse the judgment of the Office of Worker’s Compensation and recast judgment as follows, awarding Elva death benefits in the amount of $273 weekly and penalties and attorney’s fees in the amount of $11,000 with legal interest in accordance with law.
REVERSED AND RENDERED.
GUIDRY, J., dissents and assigns written reasons.