GUIDRY, Judge,
dissenting.
The OWC hearing officer concluded that, while Floyd Juneau was in the course and scope of his employment at the time of his death, his heart attack nevertheless did not arise from nor was it caused by his employment with Tudor Construction Company. There is no clear error in this conclusion and, under the well settled principles of appellate review, we are required to affirm this determination.
The medical evidence reveals that the decedent had a prior history of hypertension, obesity, high cholesterol and high triglycerides. Floyd was under medication to control his hypertension. An electrocardiogram (EKG) test conducted on June 21, 1988 revealed a right bundle branch block with T wave abnormality and considerable lateral ischemia. Floyd also smoked two packs of cigarettes per day for over 30 years and drank approximately 15 cups of coffee per day. His family medical history included heart disease, hypertension and diabetes, with his father having died from chronic heart disease.
Although Floyd’s job with Tudor subjected him to much stress, the last stressful circumstance occurred three days before his death.
Dr. L.J. Mayeaux, M.D., decedent’s family physician in Marksville, testified that stress could contribute to or accelerate a *183 heart attack. He stopped short of concluding, however, that Floyd’s job-related stress had done so in this case. According to Dr. Mayeaux, the job stress could possibly have contributed to the heart attack. On cross-examination, he stated that a heart attack caused or contributed to by stress would most likely occur at a temporal point at which the individual is under the greatest amount of or, at least, quite a bit of stress. Dr. Mayeaux also conceded that, given Floyd’s numerous objective risk factors, it was possible that his heart attack was totally unrelated to any stress.
Dr. Hubert Waguespack, M.D., an expert in internal medicine who had performed physicals upon the decedent on three occasions between 1986 and 1989, concluded that, given Floyd’s prior history of heart problems and associated risk factors, “I do not see how anyone can attribute his death to stress”. Dr. John Phillips, M.D., an expert in cardiovascular medicine, stated that it was unlikely that Floyd’s job activities, including emotional stress, were a significant factor in his sudden cardiac death. He concluded that, if stress was a factor, it was “miniscule in comparison to the other extremely potent risk factors”. Dr. Phillips had never personally examined the decedent.
Generally, an accident arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment. Mundy v. Department of Health and Human Resources, 593 So.2d 346 (La.1992). Specifically, a heart accident must be causally related in part, however slight, to the employment in order to be compensa-ble.[1] Plaintiff must show that, more probably than not, the work effort, stress or strain in reasonable probability caused, precipitated or contributed in some degree to the heart accident. Guidry, supra; Youngblood v. Rotor Aids, Inc., 491 So.2d 132 (La.App. 3rd Cir.1986), writ denied, 494 So.2d 1177 (La.1986). The Supreme Court in Guidry established an objective causation test, to-wit:
For the heart accident to arise out of or be connected with the employment, the exertion, stress or strain, acting upon the ;pre-existing disease, must be of a degree greater than that generated in everyday non-employment life (e.g., as compared to the more or less sedentary life of the average non-worker). Guidry, supra, at 633. (footnote omitted).
In Carruthers v. PPG Industries, Inc., 551 So.2d 1282 (La.1989), on rehearing, the majority held that, while the court in Guidry reached the correct result under the particular facts of that case, it had departed from prior jurisprudence in applying an objective test. Without specifically overruling Guidry, the court in Carruthers applied the pre-Guidry subjective test, i.e., whether there was a causal relationship between the employee’s work-related activities and his heart attack. The Carruthers opinion determined that the objective test, which compares the claimant’s stress, strain and exertion to that of the average non-worker, represented the minority view.
The determination of whether an injury arose out of a worker’s employment is factual in nature. As such, the trier of fact’s findings on this issue are entitled to great weight and should not be disturbed on appeal unless such findings are clearly wrong. The hearing officer’s determination that there was no causal connection between the job-related stress and decedent’s heart attack was not clearly wrong. Floyd was a hypertensive and overweight person with a long history of both hereditary and behavioral risk factors closely associated with heart attacks. Additionally, the weight of the medical evidence is to the effect that job-related stress did not cause decedent’s heart attack. Most importantly, the heart attack occurred while Floyd was *184 relaxing in his trailer watching television a full three days after the last stressful work-related activity had occurred. In the intervening time, Floyd worked on Friday and visited his brother in Abita Springs on Saturday. A large portion of the testimony did relate to the stressful nature of Floyd's job and his reaction thereto. However, the plaintiff failed to prove by a preponderance of the evidence a causal relationship between Floyd’s work-related activities and his heart attack. In light of Floyd’s prior medical, familial and behavioral history, the hearing officer’s conclusion that the heart attack did not arise out of his employment was not clearly wrong.
For these reasons, I respectfully dissent.

. Decedent's heart attack and resulting death occurred prior to the enactment of Act No. 454, § 1, of 1989 enacting La.R.S. 23:1021(7)(e) which heightened the plaintiffs burden of proof to one of clear and convincing evidence. Additionally, heart-related injuries are only compen-sable when the predominant and major cause thereof is physical work stress or exertion which is extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation. The law applicable to this case is that which was in effect prior to January 1, 1990, the effective date of Act No. 454.