562 So.2d 897 (1990)
Michael TUCKER
v.
PONY EXPRESS COURIER CORPORATION and CNA Insurance Company.
No. 90-C-0069.
Supreme Court of Louisiana.
June 4, 1990.
*898 William R. Mustian, III, Metairie, for Michael Tucker, plaintiff-applicant.
George E. Escher, New Orleans, Bruce S. Johnston, Elizabeth Beauchamp, Edward J. Womac, Jr., Law Offices of Bruce S. Johnston, Metairie, for Pony Express Corp. and CNA Ins. Co., defendant-respondent.
WATSON, Justice.[*]
In this suit for worker's compensation benefits, the primary question is whether plaintiff's episode of right shoulder and chest pain with shortness of breath, which occurred during the course of his employment, constituted an accident arising out of the employment under LSA-R.S. 23:1031.[1]

FACTS
Plaintiff, Michael Tucker, was employed by defendant, Pony Express Courier Corporation. His duties consisted of loading packages weighing up to 25 pounds into a van and delivering the packages between Kenner, Louisiana and Magnolia, Mississippi. Tucker reported for work at 9:00 p.m. on April 8, 1988, a Friday. After filling out the manifest for his route, he loaded about 50 boxes which took approximately 20 minutes. Tucker made deliveries in Hammond, Amite and Kentwood, Louisiana before meeting his relay driver in Magnolia at 1:30 a.m.
While Tucker was loading, his right shoulder began hurting and the pain radiated into his chest. The pain lasted approximately half an hour but stopped while he was sitting in his truck. During the remainder of the evening, Tucker was short of breath each time he walked, lifted anything or exerted himself. After his eight-hour shift was completed at about 5:00 a.m. on the morning of April 9, Tucker told a co-worker, Willie H. Anderson, Jr., that his chest was hurting and Anderson advised him to see a doctor.
Tucker had been employed by Pony Express since August 18, 1985 and Anderson had been with the company for almost one year. Both men worked as couriers. Tucker had never before complained to Anderson of chest pains or shortness of breath. Joyce Bailey, who had been living with Tucker almost three years, testified that he had not previously complained to her of chest pain or shortness of breath. Although Tucker had a congenital heart defect, it had previously been asymptomatic.
Tucker went home and took a short nap but the pain persisted. Joyce Bailey drove him to the St. Jude Medical Center emergency room where he was given pain medication and was discharged. Despite the pain medication, Tucker was unable to sleep that night and returned to the hospital the next day, April 10, at 3:30 p.m. When Tucker went back to the St. Jude emergency room with chest pain, "imaging" or soft tissue X-rays showed a "grossly enlarged cardiac silhouette."
Dr. Mark R. Wade, a specialist in internal medicine and cardiology, who is board certified in internal medicine, testified that he was called to see Tucker by the St. Jude Emergency Room physician because of Tucker's irregular heart rhythms. Dr. Wade examined Tucker and recorded the following impressions:
1). SUPRAVENTRICULAR TACHYCARDIA WITH CONVERSION OR INCREASED AV BLOCK WITH VERAPAMIL.
2). HISTORY OF CONGENITAL HEART DISEASE OF UNKNOWN TYPE WITH SOME DEGREE OF DESCENT, MILD OXYGEN DESATURATION, SUSPECT INTRACARDIAC SHUNT.

*899 3). INCREASING EXERTIONAL DYSPNEA SUGGESTIVE OF POSSIBLE GRADUAL DECOMPENSATION.
4). ATYPICAL RIGHT SHOULDER PAIN, POSSIBLY CARDIAC IN ETIOLOGY.
Tucker had superventricular tachycardia, which is an abnormally rapid heart rate. It had been improved to some extent by medication, but was still abnormal when Dr. Wade saw him. Tucker also had shortness of breath and complained of right shoulder pain which Dr. Wade thought could be of cardiac origin. According to Dr. Wade, both tachycardia and shortness of breath or dyspnea can be aggravated by physical activity. Dr. Wade admitted Tucker to St. Jude Hospital.
Tucker, who was 33 years old when admitted to St. Jude by Dr. Wade, had not seen a doctor for his heart condition in 15 years. During Tucker's five days of hospitalization, Dr. Wade treated him with heart medication and diuretics and monitored his heart rhythm. At the time of his discharge, Tucker had improved with medication and his heart rate had stabilized.
When discharged, Tucker was described as having massive cardiomegaly, or enlargement of the heart, with poor left ventricular function and a right side overload. His discharge diagnoses included supraventricular arrhythmias and pulmonic stenosis. Tucker's discharge medications were Digoxin, Verapamil, Quinidex, Lasix and potassium. Digoxin (Lanoxin) ameliorates the disturbances characteristic of heart failure. Verapamil is used for the treatment of supraventricular tachyarrhythmias. Quinidex assists in regulating ventricular arrhythmias. Lasix, a powerful diuretic, is used for the treatment of edema associated with congestive heart failure. Potassium is prescribed in conjunction with diuretics.[2] According to Dr. Wade, Tucker will need medication indefinitely.
Further, according to Dr. Wade, anyone like Tucker who is predisposed to arrhythmia (irregular heart rhythm) can aggravate the condition with emotional or physical stress. Dr. Wade said that Tucker had not had a heart attack but an aggravation of his long-term chronic condition. In Dr. Wade's opinion, Tucker's exertions at work "certainly could have" aggravated his heart condition.[3]
Although Dr. Wade did not specifically recall his discharge advice, he generally advises a patient like Tucker to take it easy until his follow-up visit. On August 16, 1988, Tucker's condition was basically unchanged although he had some increased shortness of breath which was attributed to running out of his medication. Tucker returned to the doctor on October 7, 1988, and reported that he was not having any shortness of breath but had an occasional, irregular heartbeat. Dr. Wade found increased fluid volume in the abdomen and prescribed medication. On October 21, a diuretic had reduced the swelling in Tucker's abdomen and he was stable.
On November 29, Tucker was feeling well, had no cardiac symptoms and wanted to return to work. Dr. Wade advised Tucker that he could return to work on a part-time basis, but should continue his medication, should not lift anything heavier than 50 pounds, should rest if he did not feel well, should report any symptoms and could increase to full-time work if he continued doing well. Dr. Wade said Tucker's prognosis is good. Pony Express refused Tucker's repeated requests to return to work.
It is not clear whether Pony Express was advised of Tucker's accident. There is no accident report in the record. The first four claim letters sent by plaintiff's attorney were directed to CNA Insurance Company. Suit was filed on July 8, 1988, and the matter went to trial on April 18, 1989. At trial, it was stipulated that Tucker's average weekly wage was $225.90-which would yield a compensation rate of $150.67 per week. It was also stipulated that Transportation Insurance Company, not CNA,[4] is the worker's compensation insurer *900 for Pony Express. No compensation benefits or medical expenses were ever paid. At the time of trial, Tucker was still unemployed, on medication and under the care of Dr. Wade.
The trial court denied benefits, holding that plaintiff failed to prove his case by a preponderance of the evidence. The court of appeal affirmed.[5] A writ was granted to consider whether the court of appeal properly applied the law to the undisputed facts.[6]

LAW
A deficient employee with a weakened heart who is vulnerable to very slight strain or exertion has been protected by the Louisiana Compensation Statutes. Behan v. John B. Honor Co., 143 La. 348, 78 So. 589 (1918), Roussel v. Colonial Sugars Company, 318 So.2d 37 (La.1975), Carruthers v. PPG Industries, Inc., 551 So.2d 1282 (La.1989).[7] A claimant need not prove that his heart accident is caused solely by his employment if the work is shown to be a contributing, accelerating or aggravating factor. Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625 (1946); McDonald v. Intern. Paper Co., 406 So.2d 582 (La.1981); Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982); Reid v. Gamb, Inc., 509 So.2d 995 (La. 1987).[8]
Disabling heart-related pain suffered by an employee at work has been recognized as a compensable accident. Ferguson v. HDE, Inc., 270 So.2d 867 (La. 1972); Adams v. New Orleans Public Service, Inc., 418 So.2d 485 (La.1982); Woolsey v. Cotton Bros. Bakery Co., Inc., 535 So.2d 1119 (La.App. 2d Cir.1988). When there is proof of an accident and an ensuing disability without any intervening cause, it is presumed that the accident caused the disability. Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969); Adams.
LSA-R.S. 23:1201[9] allows penalties for failure to pay compensation unless there is a reasonable controversy about the employee's right to benefits. LSA-R.S. 23:1201.2[10] provides for attorney's fees *901 when the failure to pay benefits is arbitrary, capricious or without probable cause.

CONCLUSION
Tucker did not have a cardiovascular catastrophe, such as a stroke or heart attack. However, Dr. Wade testified that Tucker's physical exertion at work could have aggravated his heart condition. The time sequence makes causation more probable than not. While Tucker had a congenital heart condition, he was able to function at his job until the cardiac episode during work on April 8, 1988, manifested a change in his preexisting condition. Thus, Tucker suffered a disabling accident in the course and scope of his employment.
These facts are very similar to those in Adams where an apparently healthy employee began experiencing shortness of breath, nausea and chest pains at work. Although plaintiff Adams ascribed his symptoms to indigestion, they were diagnosed as angina pectoris due to arteriosclerosis. The angina pain was held to be a compensable accident which left Adams disabled. Adams, like Tucker, met the Bertrand test for causal connection, because he exhibited no disabling symptoms before the accident.
Tucker has been released to return to work. However, his employer has refused to return him to its payroll, apparently because of his previously asymptomatic cardiac condition. It has not been shown that Tucker has other employment opportunities and it is unlikely that any employer would engage such an abnormally susceptible employee. Plaintiff is obviously entitled to supplemental earnings benefits, being unemployed at time of trial. Cf. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989).
Tucker is entitled to temporary total benefits from April 8, 1988 until November 29, 1988, supplemental earnings benefits thereafter, interest on unpaid benefits, and medical expenses, all as provided by the Louisiana Worker's Compensation Act.
Under the circumstances, the denial of benefits by the employer was not arbitrary, capricious and without probable cause. See Adams, Guidry and McDonald. Because the employer and insurer did not act unreasonably, plaintiff is not entitled to an award of penalties and attorney's fees.

DECREE
For the foregoing reasons,
THE JUDGMENT OF THE COURT OF APPEAL IS REVERSED; AND
IT IS ORDERED, ADJUDGED AND DECREED THAT PLAINTIFF, MICHAEL TUCKER, BE PAID TEMPORARY TOTAL COMPENSATION BENEFITS AT THE STIPULATED RATE FROM APRIL 8, 1988 UNTIL NOVEMBER 29, 1988, AND SUPPLEMENTAL EARNINGS BENEFITS THEREAFTER, TOGETHER WITH ALL MEDICAL EXPENSES AND LEGAL INTEREST ON UNPAID BENEFITS, AS PROVIDED BY LAW;
THE EMPLOYER AND INSURER ARE CAST FOR ALL COSTS; and
THE CASE IS REMANDED TO THE TRIAL COURT FOR CALCULATION OF *902 SUPPLEMENTAL EARNINGS BENEFITS.
REVERSED AND REMANDED.
DENNIS, J., concurs in the result.
NOTES
[*] Judge Melvin A. Shortess participated in this decision as Justice Pro Tempore.
[1] The first paragraph of LSA-R.S. 23:1031 states:

If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.
[2] Physicians' Desk Reference (43rd ed. 1989).
[3] Tr. 99.
[4] CNA Insurance Company was named in the petition as the defendant insurer.
[5] Tucker v. Pony Express Courier Corporation, 554 So.2d 793 (La.App. 5 Cir.1989).
[6] 559 So.2d 130 (La.1990).
[7] But see Act 454 of 1989.
[8] California's system may be more equitable. Benefits are apportioned between the preexisting condition, the nonindustrial disability and the industrial injury. See Duthie v. Workers' Compensation Appeals Bd., 150 Cal.Rptr. 530, 86 Cal.App.3d 721 (1978). However, apportionment is difficult. See Calhoun v. Workers' Compensation Appeals Bd. and City of Los Angeles, 179 Cal.Rptr. 198, 127 Cal.App.3d 1 (1981).
[9] LSA-R.S. 23:1201, at the time of Tucker's accident, stated, in pertinent part:

* * * * * *
E. If any installment of compensation payable without an order is not paid within the time period provided in Subsections (B), (C), or (D) of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay. No worker's compensation insurance policy shall provide that this sum shall be paid by the insurer if the director or the court determines that the twelve percent additional payment is to be made by the employer rather than the insurer. Any additional installment of compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee.
F. If any compensation payable under the terms of a final, nonappealable judgment is not paid within thirty days after it becomes due, there shall be added to such unpaid compensation an amount equal to twenty-four percent thereof, which shall be paid at the same time as, and in addition to, such compensation, unless the order is appealed as provided in R.S. 23:1351 or unless such nonpayment results from conditions over which the employer had no control.
* * * * * *
[10] LSA-R.S. 23:1201.2, at the time of Tucker's accident, stated:

Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply to cases where the employer or insurer is found liable for attorney's fees under this Section. The provisions of R.S. 22:658 shall not be applicable to claims arising under this Chapter.