DOMENGEAUX, Chief Judge.
At the time of trial in this worker’s compensation case, the plaintiff, John Canady, was disabled from a progressive heart disease known as idiopathic dilated cardiomyo-pathy. Canady first experienced the symptoms of the disease on the mornings of December 16 and 17, 1986, when he was overcome by pain while operating a ten pound “grinder” in the course and scope of his employment as an auto body repairman for the defendant, Pynes Chrysler, Inc. Canady was unable to continue working on both of those days, and he had not returned to any work as of the date of trial. The trial court found that Canady had sustained a compensable accident with resulting disability and awarded benefits and past and future medicals but denied Cana-dy’s claim for penalties and attorney’s fees. Both plaintiff and defendant have appealed.
FACTS
On the morning of December 16, 1986, John Canady reported to work at Pynes Chrysler at about 8:00 a.m. Although Ca-nady had worked for Pynes Chrysler for only ten days, he had been employed as an auto body repairman for a number of years. That morning, he turned on the body shop heater and waited about an hour for the shop to warm. He then picked up and plugged in a grinder which was described as two feet long, with a six inch grinding wheel, and weighing about ten pounds or a little more. He held the grinder at chest height and squatted down to work on the lower fender of a truck. At trial, he testified that he had been grinding for a few minutes when he suddenly felt pain in his left arm and shoulder. He stopped grinding, but the pain continued, moving to his neck. He reported the incident to his employer who allowed him to go home for the rest of the day. At home, he rested the remainder of the day, lying on his couch or his bed. He ate supper, retired for the night, then returned to work the next morning.
On the morning of December 17, 1986, Canady again reported to work a 8:00 a.m. and found the grinder where he had left it the previous day. After he had been grinding “two or three minutes” he again felt pain in his left arm, neck, shoulder and in the left side of his chest. His brother, Lonnie Canady, who had stopped by the shop to visit him, described Canady as pale and apparently in pain, holding his left arm. Canady went home, but the pain did not subside. He later began experiencing dyspnea, or shortness of breath, especially while lying down. Later that evening, his wife took him to the hospital emergency room where he was treated and released with an inconclusive diagnosis. Canady never returned to any employment.
Eventually, he was diagnosed with idiopathic dilated cardiomyopathy. For unknown reasons, Canady’s heart muscle had become diseased so that it was unable to supply his body with sufficient levels of oxygenated blood. To compensate, the heart muscle became thickened and enlarged. One manifestation of the disease is congestive heart failure, where the patient experiences shortness of breath and tightness in the chest due to the build up of fluid in the lungs. The disease will progress to the point where the patient will die unless he receives a heart transplant. On September 4, 1990, after trial but before the district court issued its opinion, the plaintiff successfully underwent transplant surgery.
The medical experts were in agreement that the condition predated the work episodes of December 16 and 17, 1986, and that, although physical exertion could precipitate symptoms in a previously asymptomatic person, the exertion would have little effect on the underlying disease process.
LAW
Under La.R.S. 23:1031, an employee is entitled to compensation benefits if he receives personal injury by an accident arising out of and in the course and scope of his employment. An accident is defined as “... an unexpected or unforeseen event happening suddenly, or violently, with or without human fault, and producing at the *568 time objective symptoms of injury.” La. R.S. 23:1021(1), as it read at the time of plaintiff’s accident.
In Tucker v. Pony Express Courier Corp., 562 So.2d 897 (La.1990), the Supreme Court recently summarized the jurisprudence applying the worker’s compensation law to accidents involving pre-existing heart conditions:
A deficient employee with a weakened heart who is vulnerable to very slight strain or exertion has been protected by the Louisiana Compensation Statutes. Behan v. John B. Honor Co., 143 La. 348, 78 So. 589 (1918), Roussel v. Colonial Sugars Company, 318 So.2d 37 (La.1975), Carruthers v. PPG Industries, Inc., 551 So.2d 1282 (La.1989). A claimant need not prove that his heart accident is caused solely by his employment if the work is shown to be a contributing, accelerating or aggravating factor. Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625 (1946); McDonald v. Intern. Paper Co., 406 So.2d 582 (La.1981); Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982); Reid v. Gamb, Inc., 509 So.2d 995 (La. 1987). (Emphasis added.)
Disabling heart-related pain suffered by an employee at work has been recognized as a compensable accident. Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972); Adams v. New Orleans Public Service, Inc., 418 So.2d 485 (La.1982); Woolsey v. Cotton Bros. Bakery Co., Inc., 535 So.2d 1119 (La.App. 2d Cir.1988). When there is proof of an accident and an ensuing disability without any intervening cause, it is presumed that the accident caused the disability. Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969); Adams. (Footnotes omitted.)
562 So.2d at 900.
ISSUES RAISED ON APPEAL
Arguing that the trial court erred in finding that Canady’s accident and disability arose out of his employment, the defendant contends that the record supports three factual conclusions: (1) that Canady first manifested symptoms of cardiomyopathy two days before he first felt pain at work; (2) that Canady’s physical exertion at work on December 16 and 17, 1986, was insufficient to precipitate congestive heart failure; and (3) that Canady’s on the job exertion was not more strenuous than his routine, non-employment activities.
The defendant argues that medical records show that Canady went into congestive heart failure two days before the incidents at his workplace. On December 17, 1986, Canady presented himself to the emergency room with complaints of shortness of breath while lying prone. The experts agreed that this complaint was a symptom of congestive heart failure. The emergency room history also indicates that Canady’s wife told hospital personnel that her husband had been unable to sleep well for three nights. However, the record offers no explanation for Canady’s inability to sleep. Several doctors testified that inability to sleep can be caused by a number of factors. No records indicate that Cana-dy suffered shortness of breath before the second episode at work. The evidence preponderates, as the trial court found, that Canady was completely asymptomatic before December 16, 1986 and that his shortness of breath did not begin until after his second incident of pain at work.
The medical experts were in agreement that Canady was unable to perform any non-sedentary employment. There was also a consensus of opinion that the disease process did not originate with physical exertion and that exertion did not cause the continued progression of symptoms. However, the record contains diverse opinions as to whether Canady’s work activities were responsible for the onset of his symptoms.
At least three physicians related Cana-dy’s physical exertion at work to the onset of his symptoms. Dr. John Phillips, a professor of cardiology who examined Canady at the defendant's request, testified that the physical activity of December 16 and 17, 1986, may have brought on the symptoms and may have resulted in a temporary aggravation of the underlying condition. *569 Although Dr. Phillips noted that a temporal association does not prove a causal relationship, he testified that the close temporal association of Canady’s work and the history of the onset of symptoms, made them likely associated. Dr. Ilyas Chau-dhry, a board certified cardiologist who testified on behalf of Canady, stated that his work activity precipitated his congestive heart failure, which in turn set into motion a vicious cycle of continuing symptoms. Dr. Chaudhry noted that Canady had a 21% ejection fraction, meaning that his heart could pump only 21% of the blood it contained, as opposed to a normal range of 55-80%. In this stage of cardiomyopa-thy, any kind of physical activity could have caused congestive heart failure, he testified. Dr. Pratap Reddy, also a board certified cardiologist, seemed certain that Canady’s physical exertion at work brought on his symptoms, although he could not relate the continued symptoms to the work activities of those two days.
Three other physicians testified somewhat equivocally on this question. Dr. Gregory Lord, a general practitioner who was Canady’s primary treating physician, testified that he didn’t know how long Ca-nady had been working on the days his symptoms appeared. Although the work of an auto body repairman, in general, could have produced such symptoms, he doubted that only two to three minutes of exertion would. Dr. Manzoor Qazi could not say if Canady’s exertions at work brought on his problems. He did testify that, assuming Canady had no other problems and was truly asymptomatic, then something more than slight exertion could have brought on the symptoms described. Dr. Henry Hanley testified that Canady’s symptoms may have been related to his work but that he would have developed symptoms anyway.
The medical and lay testimony established by a preponderance of the evidence that Canady’s physical exertion at work triggered the onset of his previously asymptomatic condition. Canady testified that body repair work was physically demanding and that the grinder was the heaviest of tools used on the job. To accomplish his assigned task on December 16 and 17,1986, Canady had to squat, hold the grinder chest high and apply pressure to the fender. There is some dispute as to how long Canady had been grinding before he first felt pain in his arm, neck and chest, but the trial court apparently accepted Ca-nady’s testimony that it was “a few minutes.” On two occasions, the same work activity produced the same symptoms, the second episode triggering more serious consequences than the first.
In Tucker, supra, the Supreme Court held that an employee’s chest pains at work amounted to a work related accident. After the accident, it was shown that the employee had a congenital heart defect and was suffering from symptoms that were very similar to Canady’s, e.g., an enlarged heart, rapid heart beat and shortness of breath. In Guillory v. United States Fidelity and Guaranty Ins. Co., 420 So.2d 119 (La.1982), the Supreme Court held that the employee’s work related accident — a fainting spell — caused the employee’s ensuing disability due to aortic stenosis. In that case, as in the case sub judice, the medical testimony was such that the accident did not aggravate the underlying disease, but was only a symptom which made the doctors aware of the previously asymp-tomic, pre-existing, progressive heart disease.
The defendant, Pynes Chrysler, further argues that Canady’s accident did not arise out of his employment because his job related activities were not more stressful than the activities of his non-employment life, a showing required by Carruthers v. PPG Industries, Inc., 551 So.2d 1282 (La.1989). Carruthers reinstated the subjective jurisprudential rule that a worker abnormally susceptible to disability is entitled to compensation for stress or exertion which would not have harmed a healthy worker.
The evidence showed that at one time some of Canady’s non-employment activities included playing a weekly basketball game, mowing a large yard and playing the drums for a band. However, as the trial *570 court found, the record contains no evidence that Canady engaged in these activities in the days or weeks before the onset of his symptoms. Dr. Chaudhry testified that with an ejection fraction of only 21%, he doubted that Canady could have done any of those activities within weeks of his developing symptoms at work. We find no error in the trial court’s conclusion that Canady met the subjective test of Carruth-ers.
The defendant argues, in the alternative, that this court should modify the trial court judgment to limit its liability for the plaintiff’s heart transplant surgery and to recognize a credit for any social security benefits that the plaintiff may be receiving. The trial court had denied defendant’s motion for a new trial on these two issues. At the time of trial, the plaintiff was still on the waiting list for the transplant, which was not performed until after the case was taken under advisement. There is also no evidence in the record that the plaintiff has ever received any social security benefits. Plaintiff testified that his social security claim was on appeal, after having been twice denied. A new trial may be granted on the basis of newly discovered evidence, but that evidence must have existed at the time of trial. Labruzzo v. Employers Ins. of Wausau, 521 So.2d 515 (La.App. 4th Cir.1988), writ denied, 523 So.2d 1342 (La.1988). The questions of plaintiff’s continued disability after trial, the responsibility for medical expenses associated with the transplant surgery and whether any credit is owed can be considered in a rule for modification under the former La.R.S. 23:1331, which was in effect at the time of the plaintiff’s accident.
Canady has answered the appeal seeking a reversal of the trial court’s denial of penalties and attorney’s fees. We find no error in this ruling and affirm. One of the most difficult questions presented in a heart accident case is whether the accident arose out of the plaintiff’s employment. See Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982). Unlike the case of Spinks v. La. Dept. of Health and Human Resources, 591 So.2d 423 (La.App. 3d Cir.1991), writ granted in part, 595 So.2d 648 (La.1992), which is cited by the plaintiff, the case sub judiee presents complicated legal and factual issues. Although the trial court and this court ruled in the plaintiff’s favor, the medical evidence was not conclusive. The defendant paid the plaintiff compensation benefits for two and a half years after the accident. The decision to terminate was made after Dr. Phillips reported that any disability caused by a work related accident was only temporary and would have ceased by that time. Under the circumstances, the trial court did not err in denying the claim for penalties and attorney’s fees.
For the above reasons, the judgment of the trial court is affirmed.
Costs of this appeal are assessed 90% to defendant, Pynes Chrysler, Inc. and 10% to plaintiff, John D. Canady.
AFFIRMED.