626 So.2d 763 (1993)
Roy ROTHELL, Plaintiff-Appellant,
v.
CITY OF SHREVEPORT, Defendant-Appellee.
No. 25,182-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1993.
Order Amending Decision on Limited Grant of Rehearing December 1, 1993.
*764 Broussard, Bolton, Halcomb & Vizzier by Daniel E. Broussard, Jr., Alexandria, for appellant.
Jerry N. Jones, City Atty., Lawrence K. McCollum, Asst. City Atty., Shreveport, for appellee.
Before MARVIN, BROWN and STEWART, JJ.
STEWART, Judge.
Roy Rothell, retired Deputy Fire Chief for the City of Shreveport, filed a workers' compensation suit against the City after he had a heart attack followed by a six bypass heart surgery. The hearing officer found in favor of the City, and Rothell appeals.

FACTS
Roy Rothell retired as Shreveport Fire Department (SFD) Deputy Fire Chief on March 1, 1990, after 42½ years with the department. He last performed work as a SFD employee on December 31, 1989. On July 31, 1990, he suffered a myocardial infarction (heart attack) at his residence in Eureka Springs, Arkansas. Rothell later underwent a six bypass coronary artery operation in the Springdale, Arkansas hospital.
Rothell filed suit against the City of Shreveport, alleging that his heart and lung disorders were occupational diseases as defined by the Heart and Lung Act, R.S. *765 33:2581, and, therefore, he is entitled to receive workers' compensation benefits.
At the administrative hearing, medical evidence showed that Rothell had developed heart and lung disease over a period of years while working for the SFD. Other evidence showed that Rothell had smoked for a 17-20 year period which ended in approximately 1965. Testimony was unrebutted that he had been exposed to numerous fires which involved toxic fumes or chemicals. There was detailed testimony about his duties for the various positions he held with the fire department, especially his stressful administrative responsibilities as Assistant Chief and as Deputy Chief.
The administrative hearing officer found that the defendants rebutted the R.S. 33:2581 presumption that Rothell's heart condition was related to his employment. In her "Memorandum Opinion and Judgment", the hearing officer stated the following:
Dr. Thomas Brown, an expert in adult cardiovascular disease, testified there are six accepted major risk factors in the development of a heart attack:
1) Smoking;
2) Hypertension;
3) Hypercholesterolemia;
4) Diabetes;
5) Family History; and
6) Male over the age of 55.
Of these six major risk factors there was medical evidence that the claimant suffered from five, a 20 year history of smoking, unchecked hypertension, hypercholesterolemia, a family history of heart and cardiovascular disease, and the status of a male over the age of 55. Although Dr. Brown admitted that the stress of claimant's position as Deputy Fire Chief might have aggravated his predisposition to hypertension, he testified that stress itself is considered to be a minor factor in the development of a heart attack.... In addition to the major risk factors listed above the claimant had a history of alcohol abuse and obesity. All of the major risk factors applicable to the claimant are the result of the claimant's heredity and lifestyle, and are not related to his job as a firefighter. Accordingly, the hearing officer denied Rothell's claim. Rothell appeals this ruling.
In the proceedings below, Rothell moved to reduce the costs of the appeal and the hearing officer denied his motion. Rothell also appeals this ruling.

DISCUSSION

Legal Principles: The City's Burden of Proof
The applicable statute, The Heart and Lung Act LSA-R.S. 33:2581, reads as follows:
Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment.
By enacting LSA-R.S. 33:2581, which provides, inter alia, that heart disease in a fireman is presumed to have developed during employment if the disability manifests itself after five years of tenure, our legislature acknowledged that a fireman, as a result of the stress and strain of his work, is predisposed to vascular diseases and heart problems. See Landry v. City of New Orleans, 266 So.2d 492, 495 (La.App. 4th Cir.1972).
The Louisiana legislature created this presumption that a firefighter's heart or lung disease developed during, and as a result of, the employment as long as it manifested after 5 years of employment. LSA-R.S. 33:2581. The Heart and Lung Act effectively *766 shifts the burden of proof to the employer to prove the lack of causation between the disease and the employment. Vincent v. City of New Orleans, 326 So.2d 401, 403 (on rehearing), (La.App. 4th Cir.1975), writ refused, 329 So.2d 760 (La.1976). At this point, a rebuttable presumption exists that the nature of the work caused the disease. Accordingly, the employer bears the difficult burden of proving otherwise and, unless affirmative proof is adduced to prove a lack of causation, the presumption requires that the disabled fireman be entitled to coverage under the Act. Vincent at 403.
It is not necessary for the claimant to prove that the employment was the sole cause of the heart injury, so long as it is shown to be a contributing, accelerating or aggravating factor. Reid v. Gamb, Inc., 509 So.2d 995, 997 (La.1987); Tucker v. Pony Express Courier Corp., 562 So.2d 897, 900 (La.1990) (citations omitted). As stated in Vincent, supra,
Though it is termed rebuttable it is, in fact, almost impossible to rebut. The City is placed in the difficult position of being obliged to prove a negativei.e., [claimant]'s heart disability could not have resulted from his service as a firefighter.
As the Louisiana Supreme Court stated years ago, "[w]e have repeatedly said it is immaterial that the disability could have been brought on by other causes other than trauma, if in fact trauma on the job which meets the standard of `accidental injury' within the Workmen's Compensation Act is a disabling factor." Cf. Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816, 828 (1969).

Application of the Proper Standard of Proof
The Heart and Lung Act specifically sets out the presumptions: as long as the heart disease manifested itself five years into the employment, it is presumed, prima facie, that the heart injury arose both during and because of the employment as a firefighter. Rothell worked for SFD for 42½ years as a firefighter in various positions. The record gives no indication that his heart disease manifested during the first half of his employment as a firefighter. Thus, at issue is, as a matter of law, whether the City rebutted the R.S. 33:2581 statutory presumptions. We agree with our brethren of the Third Circuit Court of Appeal in Vincent, supra: the defendant, here the City of Shreveport, has to show that the employment was not a cause in fact of the heart attack.
Rothell presented testimony by two expert witnesses, Dr. Robert C. Hernandez who specializes in emergency and internal medicine, and cardiologist Dr. Jim Haisten. Dr. Hernandez was Rothell's treating physician during the early 1980's through about 1986. Dr. Hernandez testified that, from his interactions as Rothell's physician, it was his opinion that the stress of Rothell's job accelerated the hypertension to the point that it accelerated the atherosclerosis and eventual cardiac event. Although Dr. Hernandez stated that Rothell could have had the same heart attack if he had been a secretary, it was Hernandez' opinion that there is greater potential that Rothell's job played a part in the acceleration of the hypertension than that it did not. In his December 7, 1990 response to a request for medical information, Dr. Hernandez stated:
I feel Mr. Rothell's hypertension was a major risk factor for the development of atherosclerotic cardiovascular disease and coronary thrombosis, as anyone would agree from medical literature and statistics. I do think, also, that his hypertension was worsened by the stress he encountered in the fire fighting community.... In closing, I do feel that in Mr. Rothell's case, heart disease was an occupational hazard in that his hypertension was more symptomatic due to the stress of his position as an Administrator and a Fire Fighter within the Fire Department.
Both Dr. Hernandez and Dr. Haisten agreed that (1) Rothell had had heart disease for several years prior to his heart attack, (2) Rothell had several factors which contributed to the development of his heart disease, and (3) a stressful work environment could be a contributing factor in his risk profile for the development of coronary disease.
The City of Shreveport presented one expert witness, Dr. Thomas Allen Brown, a *767 board certified cardiologist. Dr. Brown testified that he did not think that stress caused Rothell's heart attack. The basis for Dr. Brown's opinion was medical records and other documents. He did not examine Rothell and was not aware of the duties of a fireman.
Dr. Brown testified that stress has not been shown to produce atherosclerotic cardiovascular (heart) disease. He stated that stress is a minor risk factor that has never, in cardiovascular statistical literature, been proven to be a factor in the development of atherosclerosis. Although Dr. Brown conceded that he was unfamiliar with the duties of a firefighter, he testified that he saw no relationship between the stress that may have occurred on Rothell's job and the atherosclerosis which precipitated the heart attack because Rothell's medical history revealed several major risk factors which contributed to his atherosclerosis: severe hypertension, hypercholesterolemia (high cholesterol), remote but lengthy history of smoking, and age over 55. Dr. Brown concluded that Rothell's personal condition and health was the cause of the development of the atherosclerosis, and not his job as a firefighter. However, Dr. Brown also testified that stress aggravates hypertension and that hypertension is a major factor in the development of atherosclerotic heart disease.
The evidence presented to the hearing officer is very detailed about the other factors, major and minor, which did or could have contributed to Rothell's heart attack. However, there is no evidence which states that the employment did not precipitate, accelerate, aggravate, or otherwise cause or contribute to Rothell's atherosclerosis which caused the heart attack.[1] Even Dr. Brown agreed that he could not exclude stress as having played some role in this case. It may well be that Rothell's personal lifestyle was a contributing factor toward the myocardial infarction, but this would not render ineffectual the aggravation caused by Rothell's employment activity over the years. For this reason, we find that the administrative hearing officer erred as a matter of law, in her determination that the City of Shreveport rebutted the presumption that Rothell's heart attack resulted from his employment as a fire fighter. Rothell is entitled to receive workers' compensation benefits of $279 per week, as stipulated by counsel, and to receive payment for his associated medical expenses.

Penalties and Attorney's Fees
Rothell asserts that the administrative hearing officer erred in denying his claim, based upon refusal of the City of Shreveport to pay workers' compensation benefits and medical expenses, for penalties and attorney's fees.
A claim is reasonably controverted if the employer or the insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. McKenzie v. City of Bossier City, 585 So.2d 1229, 1237 (La.App. 2d Cir.1991); Woolsey v. Cotton Brothers Bakery Company, Inc., 535 So.2d 1119 (La.App. 2d Cir.1988), writ denied, 537 So.2d 1168 (La.1989); Holmes v. International Paper Company, 559 So.2d 970 (La. App. 2d Cir.1990).
A claimant is also entitled to attorney fees if the failure to pay benefits is found to be arbitrary, capricious or without probable cause. LSA-R.S. 23:1201.2; McKenzie, Woolsey, and Holmes, all supra; Green v. Jackson Rapid Delivery Service, Inc., 506 So.2d 1345 (La.App. 2d Cir.1987).
*768 The penalties requested by Rothell are governed by LSA-R.S. 23:1201 E which, in pertinent part, provided as follows at the time of Rothell's heart attack:
E. If any installment of compensation payable without an order is not paid within the time period provided in Subsections B, C, or D of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply.
LSA-R.S. 23:1201.2 provides for attorney's fees as follows:
§ 1201.2. Failure to pay claims; discontinuance; attorney's fees
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due....
The essential facts of this case are not in dispute. That the 33:2581 presumptions apply to Rothell is conceded for the purposes of this appeal. At issue, therefore, is whether the employer, the City of Shreveport, had a reasonable basis for controverting Rothell's claim for compensation and medical expenses. The proof required to rebut the presumption is evidence that Rothell's employment did not precipitate, accelerate, aggravate, or otherwise cause or contribute to Rothell's atherosclerosis which caused the heart attack.
In McKenzie, supra, 585 So.2d at 1237, the court noted that
[The claims examiner handling the claim] incorrectly believed that the plaintiff bore the burden of proving that his condition was caused by his employment, rather than recognizing that under the heart-lung statute, there was a presumption that the condition was employment related and the defendant must rebut the presumption.
The McKenzie, defendant argued that it justifiably denied the claim because it had information in which the issue of the plaintiff's entitlement to workers' compensation benefits was reasonably controverted. However, this court found that the claims examiner "had not properly construed the heart-lung statute and was under the mistaken impression that the plaintiff bore the burden of conclusively proving that his condition was work related."
In the instant case, Mr. Robert A. Marts, claims manager for the City of Shreveport, handled Rothell's claim. Although it did not formally deny the claim, Marts testified that the City made no payments on Rothell's claim. Marts also testified that he was aware of Rothell's claim in December, 1990, and received notice of the suit on January 25, 1991. Mr. Mart testified that he received a medical report by Dr. Robert C. Hernandez, Rothell's treating physician, on December 27, 1990 and about a week later received a report by Dr. Haisten. He received Dr. Hernandez' medical reports, pursuant to a subpoena, on July 19, 1991 and forwarded that information along with other data, to Dr. Brown.
Mr. Mart testified that he based his decisions on a report that the City received from Dr. Brown on August 14, 1991. Dr. Brown's report indicated his opinion that Rothell's cardiovascular disease was caused by other factors, as discussed above. However, it did not suggest or state that employment was *769 not a factor in causing the atherosclerosis which precipitated the myocardial infarction.
Prior to receipt of Dr. Brown's report on August 14, 1991, the City of Shreveport had no basis for its failure to comply with LSA-R.S. 23:1201 E. The record does not show that the nonpayment resulted from conditions over which the City had no control. After receipt of Dr. Brown's report, the City had no reasonable basis to assert that Rothell's employment with the fire department did not contribute to his cardiovascular injury. We also find that such nonpayment did not result from conditions over which the employer or insurer had no control and that Rothell's right to such benefits was not reasonably controverted by the City. For these reasons, we find that Rothell is entitled to, and the City is liable for, the statutory penalties pursuant to LSA-R.S. 23:1201 E.
Moreover, similar to the claims examiner in McKenzie, supra, Mr. Marts was mistaken as to the proof required to rebut the statutory presumption in the 33:2581. Marts did not properly construe the Heart and Lung Act and incorrectly believed that proof of other factors which caused or contributed to the heart attack would be sufficient to rebut the statutory presumption.
On this record, we find that the City of Shreveport was arbitrary, capricious, and without probable cause in its failure to pay the claim within sixty days of notice, pursuant to LSA-R.S. 23:1201.2. The City had no medical or other information during that time which supported nonpayment of the claim. Accordingly, Rothell is entitled to, and the City is liable for, reasonable attorney's fees.

CONCLUSION
For the foregoing reasons, the judgment of the administrative hearing officer is reversed. We render judgment as follows:
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of the plaintiff, Roy Rothell, Sr., and against the defendant, the City of Shreveport, awarding medical expenses and workers' compensation benefits at the rate of $267.00 per week to the plaintiff, Roy J. Rothell, Sr., beginning July 31, 1990, with legal interest thereon on each past due installment from its due date until paid. Defendant-appellee, the City of Shreveport, shall pay to plaintiff penalties in accordance with LSA-R.S. 23:1201 E, and $3,000 in attorney's fees.
Costs of the appeal are assessed against the defendant-appellee. Accordingly, appellant's assignment of error which requests a reduction in these costs is rendered moot.
REVERSED and RENDERED.

ORDER AMENDING DECISION ON LIMITED GRANT OF REHEARING
PER CURIAM.
Appellee, having filed for rehearing within the delay allowed by LSA-C.C.P. Art. 2166, correctly notes that our original opinion erred in fixing the amount of workers' compensation benefits. The stipulation by the parties at trial as to the amount of workers' compensation benefits applicable to plaintiff was $267.00 per week and not $279.00 per week as stated in our opinion. We hereby grant the rehearing for the limited purpose of correcting the clerical error in the judgment. With respect to all other bases for appellee's request for rehearing, the rehearing is denied.
Accordingly, the judgment is amended to read as follows:
Editor's Note: Amendment incorporated into the published opinion.
NOTES
[1] "Cause in fact" is defined in Guidry v. Sline Indus. Painters, Inc., 418 So.2d 626 (La.1982) and Reid, supra at 997, where the Louisiana Supreme Court embraced the following precepts to govern proof that a worker's heart accident arises out of the employment:

(1) If the employee has a previously weakened or diseased heart the employment exertion, stress or strain, acting on the preexisting condition, must be a degree greater than that generated in everyday non-employment life and must be a cause in fact of the employee's personal injury or death; (2) if there is no prior weakness or disease, the employment exertion, stress or strain must be simply a cause in fact of the employee's personal injury or death; (3) to be a cause in fact in either situation the employment exertion, stress or strain must precipitate, accelerate, aggravate, or otherwise cause or contribute to the worker's personal injury or death. [Citations omitted and emphasis added.]